Hill
v.
Packard.

---

## HILL and HASKINS *vs.* PACKARD and others.

Where merchants in this country gave a written engagement to their agents at the *Havana* to save them harmless from all costs, damages and expenses which might arise in consequence of any *law suit* which then *was* or *might be* brought against them for the recovery of freight or average on the cargo of a certain ship, *it was held* that the agents were entitled to recover for monies which they were obliged to pay in consequence of legal proceedings on an *award* made previous to obtaining the written engagement, the award being made in *February* and the engagement in *August*, 1815.

Where one of *several* partners to whom an indemnity is given, is compelled by a course of legal proceedings to pay out monies on account of a *demand against his firm*, the action to recover back the monies thus paid may be brought in the names of all the members composing the firm ; the presumption being that the monies were paid out of the partnership funds.

Whether the *written laws* of a country, promulgated in the form of a *code*, like a *Code Napoleon*, or the *code of Louisiana*, can be proved in like manner as the *unwritten laws* of such country is proved, *quere.*

NEW-YORK,
Sept. 1830.

Hill
v.
Packard.

ERROR from the supreme court. Packard and others brought an action of *assumpsit* in the supreme court against Hill and Haskins, on an instrument in writing given by them on the 15*th August*, 1815, in these words : "We hereby bind ourselves, our heirs, executors and assigns, to Messrs. Packard and Gowen of Havana, their heirs, executors, administrators and assigns, to save them, said Packard and Gowen, harmless for any costs, damages and expense which may arise in consequence of any law suit or law suits which *are* or *may be* brought against said Packard and Gowen or their agents by *Capt. Otzen* of the Swedish ship *Fortuna*, the owners of said vessel or their agents, for the recovery of any freight or average on a cargo of iron landed from said ship in Havana ; and we further agree to sustain and forthwith reimburse said Packard and Gowen or their agents for any sum or sums of money which they or their agents may be liable to pay, in consequence of any act of the said master, owners or agents about said business, either in or out of court ; hereby authorizing and *confirming* the said Packard and Gowen our agents in and about said business to act on our behalf." This instrument was obtained from Hill and Haskins by an agent of Packard and Gowen, who required an obligation to indemnify them for any expenses which they *as agents of Hill and Haskins* might incur for freight and average, and whatever expenses they might be at for the ship Fortuna and cargo. The plaintiffs claimed to recover $2607 and three *reals*, alleged to have been paid by them to Capt. Otzen, under an order of the court of *consulado* of Havana. On the trial of the cause, they produced a *sworn copy* of a record of the court of *consulado*, from which it appeared that on the 5*th February*, 1815, an award was made by two merchants of Havana, who in the same set forth themselves to have been "named arbitrators to settle certain differences which have arisen between *Michael Otzen*, captain of the Swedish vessel *Fortuna*, and *William C. Gowen*, agent for the house of Olof Coyk in Gottenburgh, respecting the articles of affreightment of the said vessel Fortuna, and the claim advanced by the former against the latter for *general average, additional freight* and *demurrage*," and who, after stating the

facts and circumstances of the case and determining the principles upon which the award ought to be made, adjudge that the captain was *not* entitled to *demurrage*, but that he was entitled to £500 Halifax currency for the additional freight of a cargo transported from Gottenburgh to Boston, and thence by the way of *Halifax* to the *Havana*, and that the cargo was liable to contribute to *general average* for injuries sustained in the spars and rigging of the vessel during a gale. On the 5th March, 1815, the same arbitrators having met, as they state, "for the purpose of establishing what amount should be paid for *general average* on the vessel *Fortuna*," in conformity with their award of the 5th February, decided the amount to be distributed between the vessel and cargo, and fixed that chargeable on the cargo at $1445. Those two documents were certified at the Havana to be "faithful translations corresponding with their originals in the *English* language," which originals were stated to be "rubricated." Next it appears that on the 30th August, 1819, the arbitrators certified that on reviewing their award they found nothing "to take away, alter or amend;" certifying the amount to be paid by *Gowen* to be $2607 three *reals*. On the 13th October, 1819, an order of the court of *consulado* was made, directing the award to be published, and that it should go into operation, of which notice was given to *Gowen;* and then follow a course of summary proceedings, ending in an order of the 18th December, 1819, that Gowen pay to the agent of Otzen the sum demanded within *two hours*, or that his property be sequestered: whereupon the money was paid into court by Gowen, and paid over to the agent of Otzen by the officers of the court, and satisfaction acknowledged by the agent; all which proceedings were enrolled and set forth in the record. It was proved that at the date of the instrument, to wit, the 15th August, 1815, the *firm* of *Packard and Gowen* consisted of *H. Disdier, W. Morphy, I. Packard* and *W. C. Gowen,* the plaintiffs in the cause. The witness who proved the fact, stated on his cross-examination that the plaintiffs continued partners until they dissolved, which he thought might have been in the course of the year 1818. In

1819 they suspended business. On this evidence the plaintiff rested. The defendants moved for a nonsuit on the following grounds: 1. That the evidence was insufficient to prove the plaintiffs partners of the firm of *Packard and Gowen*; 2. That the record was not duly authenticated; 3. That it did not contain a full history of the proceedings; 4. That such parts of it as are in the English language are not set forth, but only *translations* thereof into Spanish; 5. That the proceedings were founded upon an arbitration *voluntarily* entered into by Gowen, and not upon a *suit* brought against him; 6. That it did not appear that the proceedings set forth in the record related to the subject matter of the agreement; 7. That the proceedings are against *Gowen individually,* and not against the plaintiffs or their agents; and 8. That there was no evidence of any money paid by Gowen, except what appeared from the record, which at most was only evidence of what was *adjudicated.* The judge refused to nonsuit the plaintiffs.

The defendant then called a witness and offered to prove by him that he had practised in the court of consulado of Havana and was acquainted with the laws by which that court is governed; and that such laws were contained in a *printed book* then produced, which the witness had purchased at a book-store in *Havana;* and that the practice and proceedings of that court were governed by those laws. The book purported to be a royal charter establishing the *consulado* at Havana, granted at Aranguez on the 14th April, 1794, and constituted the commercial code of Havana. The defendants further offered to prove a *translation* of particular parts of the code, among which was the *fifth* article of the code which requires the court, when *parties litigant* appear before them, to endeavor to effect an amicable settlement by proffering to them a voluntary compromise or *a submission to arbitration;* and if the parties agree upon either of those two methods, the suit shall be at an end. This evidence was objected to by the plaintiffs and overruled by the judge. Evidence was given by the defendants tending to impeach the validity or regularity of the record produced by the plaintiffs, which it is deemed unnecessary to state. The jury, under

the charge of the circuit judge, found a verdict for the plain-
tiffs. A bill of exceptions having been tendered and signed,
a motion was made for a new trial in the supreme court, which
was denied by that court and judgment rendered for the
plaintiffs. (See 2 *Wendell,* 411, and 7 *Cowen,* 434.) The
defendants sued out a writ of error. The cause was argued
here by

*S. A. Foot,* for the plaintiffs in error.

*R. Sedgwick,* for the defendants in error.

The following were the points raised by the plaintiffs in
error and discussed on the argument :

1. The document admitted in evidence and purporting to
be a copy of the proceedings in the court of *consulado* at Ha-
vana, does not shew that the subject matter of the *arbitra-
tion* was the same as the subject matter of the *agreement* on
which this suit is brought.

2. The proceedings set forth in the document from Ha-
vana were founded on an *arbitration* voluntarily and extra-
judicially entered into by William C. Gowen, and not upon a
regular and *hostile suit* against him.

3. The award was made in the *English* language, and the
document produced in evidence was a *Spanish* translation
of it.

4. It does not appear from the document or otherwise that
the money paid by Gowen in pursuance of the proceedings
at Havana, was from funds belonging to the plaintiffs ; or
that Gowen was sued as their agent.

5. The *printed book* ought to have been received to prove
the royal charter establishing the court of *consulado* and the
rules for its guidance.

6. The *whole* record ought to have been produced.

In support of the *fifth* point the counsel for the plaintiffs
insisted that the evidence offered to prove the commercial
code of Havana was sufficient, and ought to have been re-
ceived. That the rule of evidence as to the proof of the
*written laws* of a country must of necessity be modified, when
a party is obliged to shew the laws of a foreign state com-

prised in a *code,* and instanced the *code Napoleon* and the *code of Louisiana;* that to prove those codes in the ordinary mode of proving *written laws* would subject parties to enormous and unnecessary expense, and frequently might amount to a denial of justice, while the object of all evidence, the ascertainment of facts, would not be promoted; the *written* law of a country thus proved would be more satisfactorily shewn than the *unwritten* law by the established mode of proof. In *England* the courts had relaxed the rule, and had admitted evidence to prove the *code Napoleon* similar to that offered here. *Lacon* v. *Higgins,* 1 *Dowl. & Ry.* 38. 3 *Starkie,* 178.

The following opinions were delivered:

By the CHANCLLLOR. The first objection made to the recovery in this case is, that the document admitted in evidence on the trial purporting to be a copy of the proceedings in the court of consulado at Havana, does not show that the subject matter of the award was the same as the subject matter of the agreement on which this suit was brought. This question was left to the jury, and they have decided it was the same transaction. The agreement is to indemnify against suits brought or to be brought against Packard & Gowen, or their agents. The suit is nominally against one of the partners of the firm, because he was the only resident at that place; but the specification of the claim shows that it was in fact made against the house of Packard & Gowen. And whether they were called the agents of the house of Olof Coyk, in the proceedings, or the agents of his agents, is perfectly immaterial. The indemnity is against any suit which had been or might be brought for freight or average on account of that cargo of iron. And the jury could not have found otherwise than they did on this question; as there can be no possible doubt as to its being the same matter alluded to in the agreement.

The original claim was for freight, additional freight, general average, and demurrage; but the agreement says nothing as to demurrage. It must be recollected that this agreement was made some months after the claim for demurrage had been rejected by the arbitrators; and there-

fore it is not necessary to enquire whether a claim of that
kind would have been covered by the agreement.   The claim
which Packard and Gowen were compelled to pay was freight
and average only ; and these are within the express terms of
the indemnity.

The second objection is that the proceedings in the court
of consulado were founded upon an arbitration voluntarily
and extrajudicially entered into by Gowen, and not upon a
regular and hostile suit against him.   I am inclined to think
the plaintiffs in error are correct in this position ; but I can-
not agree with them in the conclusion of law which they at-
tempt to draw from it.   The award was made long before
the agreement of indemnity was entered into.   It was proba-
bly to protect Packard & Gowen against the consequences
of the claims which might be made under this award as well
as other claims which might be made if the award should be
set aside, that the indemnity was obtained.   I think it may
be fairly inferred from the proceedings that Gowen remitted
the whole proceeds of the cargo to Hill & Haskins; and as
this claim was still hanging over him, he took their indemni-
ty and agreement to bear his house harmless.   Whether this
award was founded upon a compromise or submission made
in open court, under the provisions of the *fifth* section of the
royal charter, establishing the court of consulado at Havana,
or by a private agreement between the parties, does not ap-
pear to be very material, because, in either case, I apprehend,
the legal effect would be the same ; as the submission itself
would be a termination of the suit then pending.   The award
probably was not conclusive upon either party ; but by the
civil law, which appears to be recognized as the law of Spain
in this respect, if the party did not appeal from the decision
of the arbitrators, or petition for a correction of it within the
time prescribed by law, it was considered as tacitly consent-
ed to by him ; and the adverse party might bring an action
for the specific performance thereof.   *Wood. Ins. Civil Law,
B. 4, ch. 3.   Code, B. 2, tit. 56, § 5.*   The suit commenced
in the court of consulado in 1819, was unquestionably a pro-
ceeding on the part of Otzen, to compel a performance of
the award of February, 1815.   And certainly the plaintiffs

in error can have no reason to object that it was referred back to the arbitrators, to review their award. They did not alter it to the disadvantage of Hill & Haskins; and although they did not vary its principles as to either party, yet they actually reduced the claim made by Otzen under that award, more than $1500. If Gowen tacitly consented to the correctness of this decision, by neglecting to appeal, or to petition for the correction of it within the ten days allowed by the Spanish law, it was undoubtedly because he was satisfied the facts would not justify a more favorable decision. The whole proceedings show that he did not actually consent to any of these claims; but that the money was drawn from him by the compulsory process of law; for it was not till he was ordered to pay the money instanter, or submit to a sequestration of his property, that he consented to pay the amount decreed against him by the court. Whether the decree was just and equitable is perfectly immaterial, if he had not the power to resist its execution. By the agreement of August, 1815, Hill & Haskins constituted him their agent, to act on their behalf in the defence of any suit brought for this claim; and if the facts are correctly recited in the original award, he certainly acted the part of a discreet agent in submitting to the decision, without making any further expense, after he had obtained the deduction for the difference in exchange, and for the loss on that part of the cargo which was disposed of at Halifax.

The third objection is, that the award was made in the English language, and that the document produced on the trial was only a Spanish translation thereof. The document produced on the trial did not purport to be a copy of the award, but only a copy of the record of the proceedings in the court of the consulado. Although the original award was in English. it would be very singular if the records of the court were not in the language of the country where the court was held. Hence we find when Otzen brought his suit in that court on the award, the original was not acted on, but he was compelled to furnish a Spanish translation thereof certified by the official translator of the court. The original English award was rubricated, and returned to the party, as

appears by the certificate of Hernandez the translator, an-
nexed to the copy which remains on record. It was on this
translation and not on the original that the proceedings and
sentence of the court were founded. The same thing has
been done in our own courts in the case now before us. On
the trial of this cause the Spanish copy of the record was
produced; but that being unintelligible both to the court and
jury, a sworn translation was made and given in evidence,
and this translation alone appears on the record and bill of
exceptions. If it should turn out hereafter that Olof Coyke
had agreed to indemnify Hill and Haskins against any suit
which might be brought against them on their indemnity to
Packard and Gowen, and a copy of the record in this suit
was produced, could it be any possible objection to these pro-
ceedings that the original exemplification in the Spanish lan-
guage was not incorporated into our records?

The fourth objection is, that it does not appear that Gow-
en was sued as the agent of the firm, or paid the amount de-
creed against him with funds belonging to his house. This
objection was not made by the bill of exceptions, and there-
fore we may presume that evidence on that point might have
been produced if the objection had been raised at the trial.
But I think there is sufficient evidence in the case to have
authorized the jury to find the fact. I have already adverted
to the circumstance that the claim was actually made against
the firm of Packard and Gowen, as the representatives of the
owners of the cargo. Whether by the Spanish law the co-
partners would be bound by a submission entered into by one
of the firm does not appear; but if such submission was
made by a partner in good faith and he paid money under
the award, it might still be a just claim on his part against
the firm; and certainly they might sanction an act of a co-
partner under such circumstances. This recovery was had
for an act done by him as one of the firm. Even if a plea in
abatement would be sustainable by the Spanish law, where
the other partners were nonresidents, it could not be neces-
sary for Gowen to make that technical objection. The le-
gal presumption is that he paid the judgment out of the part-
nership fund; but if he did not he has a right to charge it to

the firm, and they were the proper parties to bring the action on the agreement. And it is immaterial, for this purpose, whether the partnership was or was not dissolved before the termination of the suit ; the foundation of the claim being a partnership transaction.

The fifth objection relates to the admissibility of a printed book, purchased at a bookstore in Havana, to prove the royal charter, establishing the court of consulado, and the rules for its government. It is a rule of evidence that the *unwritten laws* of a foreign country must be proved by witnesses who are acquainted with those laws, and *written laws* must be proved by an authentic copy, from the records or archives of the country where the original is recorded or deposited. Whether this last principle is applicable to the written laws of a country which are established and promulgated by the government in the form of a *code*, like those of France and Louisiana, or the recent revision of our own statutes, is the question intended to be raised by this objection. Undoubtedly great and unnecessary expense to the parties may be the result of adhering closely to the rule of the common law on this subject ; but whether it is in the power of the courts to dispense with the rule is a very grave question. It is undoubtedly a proper subject for legislation, as it would be very difficult for the courts to establish rules of evidence which would save unnecessary expense to litigants, and at the same time guard against impositions without disturbing settled principles. It is doubtful whether there was any thing in the particular law offered in evidence in this case to take it out of the general rule as to the written laws of foreign countries. It does not appear to differ materially from the ordinary laws of a country which are promulgated from time to time in separate and detached acts. It can hardly be denominated a code. I have also looked into it for the purpose of seeing whether its introduction or rejection could have altered the verdict in this case. I presume if the counsel for the plaintiffs in the court below had done so before they made the objection at the circuit, this question would not have arisen. I can find nothing therein which appears to have any material bearing on this case, except the 5th sec-

tion. By this section it is made the duty of the court to propose to the parties when they first appear, and before any formal proceedings are had, to settle between themselves, or to submit the matter in difference to arbitration; and if they agree to do either the suit is at an end. This probably was the way in which the original agreement to arbitrate, in February, 1815, was brought about. But this only shows that Gowen acted in the spirit of this law when he agreed to submit this mercantile question to the examination of two merchants, to say what was the mercantile law on the subject. The question raised by the 5th point is therefore not material to the decision of this case, and I shall forbear expressing any opinion thereon.

The sixth and last objection is, that the whole record of the judgment of the court of consulado was not produced. Although there might have been some grounds for this objection on the first trial, there is certainly no foundation for it at this time in point of fact. We have now the testimony of H. Munusuri, who swears positively that he examined and compared the copy of the record produced at the trial, with the original record, in the office of the records in the court of consulado at Havana, and found the same to be in all respects a correct and true copy. This, in addition to the official certificate of the proper officer of the court, must certainly be sufficient to establish the fact that this is the whole of the record. If there is any informality in the original record, it is the fault of the court and not of Gowen, and it ought not to defeat his claim under this indemnity. The ordinance for the organization of the court shows that its proceedings are intended to be summary; and to lawyers in this state they must necessarily appear informal.

On the whole, I see no reason for disturbing the judgment of the supreme court, and I think it should be affirmed.

By Mr. Senator ALLEN. The material question presented by this case, appears to be, did the instrument in writing, signed by the plaintiffs in error, guarantee a reimbursement

of the money paid by Gowen in pursuance of the proceedings against him by Captain Otzen?

The instrument appears to have been drawn with the view of meeting all costs, charges or expenses whatever growing out of the controversy between Gowen and Otzen; for it not only promises to save harmless for any costs which may arise in consequence of any law suit or law suits which *are* or *may be* brought against Packard and Gowen, by Captain Otzen, but for any sum or sums of money which they or their agents may be liable to pay, in consequence of any act of the captain, *either in or out of court.* I am unable to construe this writing in any other way than as a full and complete guaranty or indemnity for any payment made by the defendants in the matter to which it refers. It is objected, however, that the indemnity to Packard and Gowen was intended against damages by law suits, while the money paid by them was, on an award of arbitrators, under an amicable settlement of difference, and not by a regular and hostile suit; and that the payment of the award cannot therefore be a ground for recovery.

It is a fact that the subject was in the first instance submitted to arbitrators; and although, to my view, the words of the writing, "*either in or out of court,*" and the reasons assigned by the witness who obtained that paper, viz. "to indemnify Packard and Gowen for any expense they, *as agents of the defendants,* might incur for freight and average, and whatever expenses they might be at for the ship *Fortuna* and cargo," would have authorized the payment of the award by Gowen, without further proceedings in the case, it nevertheless appears that further proceedings were had, and that the money was not paid by Gowen until compulsory process was issued for the purpose.

That the proceedings in the case were viewed as a *suit at law,* I think appears from the records of the court of consulado, as submitted on the trial in the court below. On the 4th of March, 1819, Captain Otzen appoints *Endara* his attorney *in the suit* which he is prosecuting against Gowen. The bill of costs is headed, "Taxation of costs *in the suit* carried on by Don Miguel Otzen against Don William Gowen;" and in the memorial of *Endara,* he calls the proceed-

ings *the suit* undertaken for the recovery of a certain amount in

dollars from D. W. Gowen. It further appears that a final decree was passed by the court on the 18th of December, 1819, to compel Gowen to pay the amount demanded within two hours, or meet the consequence; and that on the same day, the money was paid into *court,* and on the 20th of December following, it was paid by an officer of the *court* to *Endara,* as the attorney of Don Miguel Otzen. It would seem, therefore, that a regular suit was instituted on the award of the arbitrators, and that the money was paid on compulsory process.

The next point raised by the counsel for the plaintiffs is an objection to the authenticity of the records of the court of consulado at Havana. The proof required to permit foreign judgments to be produced as evidence in our courts appears to have varied with the circumstances of the case : that the copy must be proved to be a true copy of the original record appears indispensable.

Copies of records are to be proved as other transcripts, by a witness, who has compared the copy, line for line with the original, or has examined the copy while another person read the original. It is a general rule that a copy authenticated by a person appointed for the purpose, is good evidence of the contents of the original. 1 *Phil. Ev.* 310. In the prssent case we have the deposition of *Munusuri,* that the documents were examined by himself and *Larratti,* and compared with the originals in the office of the records in the court of consulado at Havana, and that they found the same in all respects a true copy, and that the seal affixed is the seal of the college of notaries of the city of Havana, and is the usual mode of authenticating the proceedings of the court of consulado in Havana. It would seem, therefore, that the rule laid down by *Phillips* has, in every essential particular, been complied with, and that the proceedings of the court of consulado were properly admitted as evidence to prove the amount paid by Gowen, and the purpose for which it was paid.

It was further objected that there was no evidence that the money paid was the property of the plaintiffs, or that Gowen was sued as the agent of the plaintiffs. It appears by the

case, however, that Gowen required, before he paid the money, a warrantee from *Endara*, the attorney of Otzen; and that he was answered by the attorney, that he did not consider himself under any obligation to furnish the warrantee, as the decision of the arbitrators expressly declares that Gowen cannot avail himself of the argument of *his having remitted the funds to the persons interested in the cargo.* This is presumptive proof at least that Gowen had remitted the proceeds of the cargo to his principals, and that the money recovered from him was the property of his firm.

In answer to the objection that the award was against Gowen *individually*, and not against his firm, it was shown by the counsel for the defendants in error, and to my satisfaction, that by the civil law of Spain, it is not necessary to institute a suit against all the partners of a firm, and therefore, that the captain had a right to select whom he would sue. That Gowen acted as the representative of his house is evident from all the circumstances of the case; the instrument of indemnity was given to the firm; the cargo came to the firm, and the document stating the account is in the name of the firm. I think, therefore, that the proof that Gowen was sued as the agent of his house is sufficiently clear.

On the whole, it appears to me that enough was shewn to authorize the conclusion that the proceedings were legal, and that the monies recovered from Packard & Gowen by Miguel Otzen were the costs, damages and expenses, from which it was intended they should be warranted by the agreement of the 15th of August, 1815, entered into by the plaintiffs in error. I am of opinion, therefore, that the judgment of the supreme court ought to be in all things affirmed.

By Mr. Senator BEARDSLEY. No evidence was offered in the court below by the defendants, (the present plaintiffs in error,) except the printed book said to contain the commercial code of Havana, and the proof offered in connection therewith, except some testimony tending to excite a suspicion that the whole of the proceedings were not set forth in the document produced as the record of the proceedings in the court of consulado at Havana.

Did the court err in rejecting this testimony offered ? Clearly not. The unwritten or common law of a foreign country may be proved by learned men acquainted with that law ; but a statute, charter or ordinance of a foreign government must be otherwise proved ; an exemplification or sworn copy is required. 6 *Cranch,* 274. 1 *Johns. R.* 394. 2 *Cranch,* 187. 1 *Johns. R.* 394.

The offer was to prove the commercial code or royal charter by reading from a printed book, not printed by authority ; nor did the defendants offer to prove that the witness had ever compared it with the original. The laws of a sister state, or even our own, would not be received in evidence upon such proof. The case of *Lacon* v. *Higgins,* 3 *Starkie,* 178, found in 14 *Com. Law Reports,* 176, is relied upon by the defendant's counsel. In that case, to prove the law of France in relation to marriages, the French vice consul was called as a witness, who produced a book, which he said contained the French code, upon which he acted at his office ; that there was in Paris an office for printing the laws of France, called the royal printing office, where the laws were printed by authority of the French government ; the book purported to have been printed at that office, and contained a body of French laws and a commentary upon them, and the witness stated that the book would have been acted upon in any of the French courts. It was insisted that the book, coupled with the parol proof, was sufficient ; and on the authority of *The King* v. *Picton,* 30 *Howell's State Trials,* 514, Chief Justice Abbott admitted the evidence, although he doubted its propriety. In the case of *The King* v. *Picton,* at page 494, it seems that the objection was waived, so that this case does not sustain the learned judge in admitting the evidence. In *Chanoine* v. *Fowler,* 3 *Wendell,* 173, an offer to prove the French code, in substantially the same manner, was decided by the supreme court to be insufficient ; and the case of *Church* v. *Hubbard,* 2 *Cranch,* 236, is relied upon as authority. The cases of *Lacon* v. *Higgins,* 3 *Starkie,* 178, and *Chanoine* v. *Fowler,* 3 *Wendell,* 173, are much stronger cases than the present ; because, in those cases, the books containing the French code were produced and identified by official agents

of the French government as official publications; yet with the corroborating testimony of the agents, the propriety of receiving the books in evidence, according to strict common law rules of evidence, may well be doubted. But granting that Chief Justice Abbott was right in admitting the evidence, and our supreme court wrong in rejecting it, it by no means follows that the proof offered in this cause was sufficient. The rules of evidence in relation to foreign laws are well settled, and if they operate with too much severity, the legislature can apply the remedy.

The printed book having been rejected, it can hardly be necessary to comment on its contents; but from extracts set forth in the case, I can discover nothing that militates against the plaintiff's right to recover.

The testimony of the witness who was sworn for the defendants to prove the practice of the court of consulado, and to explain the mode of making up records in that court, and to impeach the validity of the record offered, appears to me not to vary the rights of the parties. In fact, a considerable part of his testimony in relation to the record appears to be more a matter of inference than positive proof.

The question then arises, did the plaintiffs below make out a *prima facie* right to recover? They proved the agreement to indemnify Messrs. Packard and Gowen against all damages and costs which might arise in consequence of any law suit which had or might be brought by Captain Otzen of the Swedish ship Fortuna, &c. They also proved that the plaintiffs below composed the firm of Packard and Gowen; and that before their attorney commenced this suit, he either spoke to Mr. Hill or dropped him a note in relation to the claim, and Mr. Hill, instead of denying the plaintiff's right, requested that it might be arbitrated at Boston. In addition to this evidence, the plaintiffs introduced a copy of the record from the court of consulado, from which it appeared that an award and adjudication was made against Gowen in relation to the subject matter of the agreement; and it also appeared from the record that Gowen had paid the money.

The jury by their verdict find that the firm of Packard and Gowen was composed of the plaintiffs; and their verdict

goes to establish the fact that Gowen, as the agent of the
plaintiffs, was compelled to pay the money. In this court,
every reasonable intendment should be made in favor of the
finding of the jury in the court below ; and if this court was
now sitting as a jury to decide upon the questions of fact,
they probably would not materially err in coming to the
same conclusion.

Several objections were made by the defendants below to
the admission of the Spanish record. It was objected that it
was not sufficiently authenticated. The record was certified
by the second notary of the consulado, the seal of the royal
college of notaries affixed, (the court of consulado having no
seal,) and to this was added the official certificate of Michael
Hogan, commercial agent of the United States at Havana,
that full faith and credit was to be given to it ; also, a certifi-
cate from the college of notaries, certifying that the person
signing was the keeper of records, that full faith was to
be given, and certifying the seal and signatures to be genu-
ine. In addition to this authentication, a witness testified
that he examined and compared it with the original, and
found it correct. It is then a sworn copy, as well as a cer-
tified one, and was properly admitted. *Gardere* v. *Col. Ins.
Co. 7 Johns. R. 514.*

It is proper to remark, that the record was not introduced
as the ground of action, but as evidence that the plaintiffs
had been compelled to pay money, against which payments
the defendants had agreed to indemnify them. If the suit
had been predicated on the award or on the record, it might
perhaps have been necessary to have produced the whole ;
but enough is produced to shew the recovery against Gow-
en and the payment by him. The award and items of ac-
count set forth in the proceedings establish the fact that the
recovery related to the subject matter of the defendant's
agreement, and is sufficient, *prima facie*, to charge the de-
fendants.

It was objected that the recovery was had upon an arbitra-
tion extra-judicially entered into by Gowen, and therefore
not binding on Hill and Haskins.

As Hill and Haskins agreed to indemnify against suits *then commenced* or *to be commenced,* and this suit by arbitration having been commenced six months before the agreement, it is a fair presumption that they were made acquainted with the fact when they signed the agreement. This presumption seems irresistible from the fact that Hill and Haskins never complained of bad faith on the part of Gowen, nor did they offer any testimony to that effect. An arbitration is recognized by the court of consulado, and is recommended and prescribed by the charter establishing the court. Under these circumstances, Gowen had a right in a commercial transaction, as the agent of Hill and Haskins, to arbitrate, and they were bound by it unless they dissented. *Goodson* v. *Brooke*, 4 *Campb.* 164.

The question now is not whether the arbitrators decided right, or whether proceedings could have been had against joint debtors where part were absent ; but did Gowen, in behalf of his co-partners, pay the money ? and was he *compelled* to pay it for Hill and Haskins ? The documents show the affirmative ; and whether the recovery was right or wrong, Hill and Haskins must abide by their agreement to indemnify, unless Gowen by bad faith procured the recovery, or suffered it to be obtained by his default ; nothing of which appears ; on the contrary, it appears that he resisted until his property was about to be seized.

It appears that the award was in *English,* and was translated into *Spanish* by the official interpreter, and thus translated was incorporated into the record. It is not to be supposed that the record was made up partly in English and partly in Spanish ; such a record would have been an anomaly ; besides, it is stated that the original awards in the English language "were rubricated, and returned at the request of the party." What is meant by *rubricating* is not precisely understood ; but probably on being translated by the official interpreter and carried into the record, the original was marked and returned to the party. If so, it could not be necessary to produce the original to prove the payment or the liability.

Gowen paid the money, as appears from the recitals and proceedings set forth in the document; and as he acted for the plaintiffs, his co-partners, and as agent for Hill and Haskins, it is a fair presumption, *prima facie*, that he paid with the funds of his co-partners; he paid for Hill and Haskins, and if not with co-partnership funds, his co-partners were liable to him, and Hill and Haskins to the firm of Packard and Gowen.

Enough of the record was produced to shew that the money had been compulsorily paid; and as the action was not brought on the record, it was not necessary to produce the whole. *2 Campb.* 69. *7 Johns. R.* 514. The judgment of the court below must be affirmed.

Whereupon, the judgment of the supreme court was *unanimously affirmed.*