AB GOODMAN, Plaintiff, *v.* NATHAN SCHULMAN, Defendant.

City Court of New York, Kings County, June 30, 1932.

*Goldberg & Solomon*, for the plaintiff.

*Weinstein & Levinson*, for the defendant.

GEISMAR, J.   On April 19, 1926, Brandt & Co. made a chattel mortgage for $25,000 to the Mastan Company which was later duly assigned to the defendant Schulman.   This mortgage contained the familiar clause permitting summary entry, seizure and public or private sale upon any default.   The only provision as to notice is contained in an ensuing clause which says: " And it is expressly understood and agreed that if Notice of Seizure or sale be sent to the mortgagor by registered mail at the above address it shall be deemed sufficient notice thereof."   On February 8, 1927, the mortgagors made to one Goodman, plaintiff's assignor, what purports to be and is denominated an assignment, but which in reality is a second or subsequent lien or chattel mortgage, to secure a further indebtedness of some $6,000.   This document provides that if and when the indebtedness to the first mortgagee is paid, the mortgagor agrees that all securities held by such first mortgagee shall not be turned over to said mortgagor but shall be given to the possession of the second mortgagee if the latter has not been paid at that time.   The first mortgagee is in no wise a party to this instrument.   On the same date, February 8, 1927, a copy of this so-called assignment was served on the first mortgagee, who receipted for it in the following words: " Feb. 8, 1927.   Received a copy of the foregoing with the above corrections.   (Signed) Mastan Co., N. Schulman, Pres."

On June 28, 1930, the first mortgagee after default and demand, and after having duly notified the mortgagor by registered mail, sold the chattels at public auction, the second mortgagee having been served with no notice other than the public advertisement of sale.   The second mortgagee, through his assignee, the plaintiff, now claims:   (1) That he was legally entitled to notice of seizure and sale; (2) that since he received no notice, the seizure and sale are invalid; (3) that the first mortgage because of the sale is now merged in the title and all rights thereunder exhausted; (4) that, therefore, the second mortgage now becomes a first mortgage for its amount of $1,750, and (5) that the damages suffered by the plaintiff because of this trover or conversion must be fixed at the face of his second mortgage, to wit, $1,750, for which he demands judgment.   The amount due on the first mortgage, it is agreed, was $20,000, and it is further agreed that the true market value of the chattels is somewhere between $1,750 and $20,000.   The

defendant in the agreed statement agrees also to deliver the said chattels to the plaintiff upon payment of the face of his first mortgage, namely, $20,000.

I am of the opinion that the so-called assignment or second chattel mortgage binds the defendant to nothing whatever except to deliver his securities to the second mortgagee on payment of the $20,000 or any sum found due to him. He is not a party to the instrument as heretofore observed. I cannot perceive any line of reasoning leading to a doctrine, nor are any cases pointed out to me which hold that any agreement whatever between a second mortgagee and the mortgagor can in any wise whatever alter, amend, vary, modify, change, increase or diminish the contract of the first mortgagee as set forth in the chattel first mortgage unless the first mortgagee becomes a party thereto. It is true that there may be conduct on the part of the first mortgagee which estops him. (*Sheldon* v. *McFee*, 156 App. Div. 877.) But I cannot see nor is any case cited to me which holds that reception of a copy of the second mortgage by the first mortgagee can be held to be such conduct on his part as to have the result of modifying or altering the first mortgage.

It may be of value to restate briefly here what in my humble view are the pertinent, well-known and accepted principles of law and practice applicable to chattel mortgages. Both counsel complain in learned briefs that there is a paucity of cases on the precise points involved in this litigation. Perhaps that paucity of authorities is due to the facts, *first,* that the established practice of the profession and of the business world is so clear and well understood that the points here raised are novel, and, *second,* that the numerous adjudicated cases pertaining to chattel mortgages set forth the general principles so categorically that without further discussion on the points raised here, such difficulties are resolvable as a mere matter of rather transparent logic. In the first place it only leads grossly astray to liken the legally approved method of calling in chattel mortgages to the prescribed method of calling in a realty mortgage. Obviously any attempt by a realty mortgagee to realize his overdue mortgage by forcibly taking possession of the property and retaining it in satisfaction of the debt would be laughable. Yet this is done frequently in respect of chattel mortgages and the practice is within limitations sanctioned by law. The law recognizes that personal property taken as a mortgage security, because of its transitory nature, can easily be lost, strayed, converted or stolen. Realty cannot stray or be converted or stolen. Hence the law merchant recognizes the necessity of sanctioning summary methods of seizure to call in chattel mortgages. Were it

otherwise, any system of credit extended upon chattels as security would be imperilled and perhaps break down. Cautious lenders would decline to lend on so insecure a collateral. Hence we have the principle that immediately on default, the chattels are the property of the mortgagee, to seize as the mortgage provisions direct, and no other or further notice is required except as the chattel mortgage itself covenants. If the mortgagee retains the property, the general practice is that the debt is wholly extinguished. The law on this point is, however, that he takes at their worth and he may be compelled to sell, any deficiency to be charged against the mortgagor, and if there be any surplus it is to pass to the latter. Under no circumstances, whether the conduct of the mortgagee be irregular or the sale unfair, can it follow that the mortgagee can be penalized by declaring his mortgage merged with the title or that his remedy is exhausted and that his mortgage is extinguished so that a second mortgage now becomes a first mortgage. This principle is fortunately very clearly enunciated in *Harrison* v. *Hall* (239 N. Y. 51, opinion by Judge CARDOZO), which says: " A mortgagee of chattels after default is at law the owner * * *. If he sells, and the sale is valid, he cuts off thereby the equity of redemption. If he resumes possession, but fails to sell within a reasonable time, or sells unfairly or irregularly, the consequence is, not that the debt becomes extinguished, but that the mortgagor may be credited with payment up to the value of the property." This case further holds that if the mortgagor questions the forcible retention by the chattel mortgagee, he must both plead and prove value. (*Spencer* v. *Harford*, 5 Wend. 381; *Minor* v. *Beveridge*, 141 N. Y. 399; *Leadbetter* v. *Leadbetter*, 125 id. 290.)

How can the plaintiff then hope to succeed in this cause, when he himself admits in the agreed statement that the chattels are of a worth that is less than the amount of $20,000 actually due to the defendant, and that the sale under which the mortgagor becomes chargeable with a deficiency was entirely fair and legal? It follows that whatever be the right of the plaintiff to sue in equity to set aside the sale, he is without standing in this action in this court. Judgment for the defendant.