# JACK LEPLEY v. STATE.

No. A-9629.  June 6, 1940.
(103 P. 2d 568.)

Pierce, McClelland, Kneeland & Bailey, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Alvin C. Bruce, Co. Atty., of Ardmore, for the State.

BAREFOOT, J.  Defendant, Jack Lepley, was charged in the county court of Carter county with the crime of "interference with standing vehicle"; was tried, convicted, and the court assessed his punishment at a fine of $100 and costs, and a jail sentence of 30 days.

Four separate propositions are submitted by the defendant for reversal of this case. We are of the opinion that they may be disposed of by considering them together, and it will not be necessary to consider each separately. For this purpose it is necessary to briefly state the facts as revealed by the record.

The defendant, Jack Lepley, was an agent of the Universal Credit Company. This company was engaged principally in handling the paper taken by automobile companies from those who purchased automobiles. J. R. Whitten, the complaining witness, had purchased an automobile from the Brattain Motor Company of Lamont, Grant county, Okla., and this company took what is known in law as a conditional sale contract from J. R. Whitten, and this contract was assigned to the Universal Credit Company by the Brattain Motor Company. This conditional sale contract was introduced in evidence, and among its terms were the following:

"* * * which purchaser promises to pay to the order of Universal Credit Company at its office in 18 equal consecutive monthly installments of $28.00 each * * * on the 5th day of each successive month beginning October 5, 1937. * * *"

And contains the following provisions:

"1. Purchaser agrees: That title to said property shall not pass to the purchaser until all sums due under this contract are fully paid in cash; * * * that payment to anyone other than Universal Credit Company will not constitute payment hereunder; * * *".

And also: "* * * that Seller's assignee shall be entitled to all rights of the Seller." And further:

"Time is of the essence of this contract and if any installment is not paid in full when due, or if purchaser fails to perform any of his obligations or comply with any conditions of this contract, * * * this contract shall be in default and the full amount remaining unpaid shall immediately become due and payable * * *."

And:

"Upon any such default, seller may take immediate possession of said property including any equipment or accessories thereto without legal process, without demand and for this purpose seller may enter any premises where said property may be found and remove same."

The evidence reveals that monthly payments were to be made by Mr. Whitten in the sum of $28. That default had been made in the October, November, and December, 1938, payments. That certain negotiations for the settlement of these delinquent installments had been had between the defendant and complaining witness prior to January 28, 1938. For a proper disposal of this appeal it is unnecessary to relate these negotiations. On the above date the defendant, Jack Lepley, seeing the automobile covered by the conditional sale contract parked on the public streets of the city of Ardmore, and acting upon instructions from

his company, the Universal Credit Company, took possession of the car, and drove the same to the Sam P. Hale Motor Company, and there stored it in the name of the Universal Credit Company, taking a receipt therefor. The taking possession and operating of the automobile by the defendant was without the knowledge or consent of the complaining witness, Whitten, other than as expressed in the conditional sale contract, heretofore quoted.

The complaining witness upon locating the automobile and finding that defendant had removed the same, proceeded to the office of the county attorney and filed the charges against defendant as above stated.

The statute upon which this charge was based is Oklahoma Statutes 1931, § 10292, 47 Okla. St. Ann. § 235, which is as follows:

"Any person who shall, without consent of the owner, start, or caused to be started the motor of any motor vehicle, or shift, change, or move the levers, brake, starting device, gears, or other mechanism of a standing motor vehicle to a position other than that in which it was left by the owner or driver thereof, or attempt to do so, or shall intentionally cut, mark, scratch or damage any part or portion of said motor vehicle or any accessories, equipment, appurtenance, or attachments thereof, shall, upon conviction thereof, be punished by a fine not exceeding One Hundred Dollars ($100.00), or imprisonment in the county jail for a period not exceeding six (6) months, or both such fine and imprisonment in the discretion of the court. Provided, that this section shall not [apply] in case of moving or starting of motor vehicles by the police or peace officers for lawful purposes, nor by members of fire departments in cases of emergency in the vicinity of a fire, nor the changing of the position of said motor vehicle temporarily without starting the motor of the same by any one for the purpose of extricating another vehicle from a congested position."

It is the contention of the defendant that:

"The holder of a conditional sale contract covering an automobile, the title to which is reserved in the seller, does not have a lien on the property, but is the owner of it and is entitled to recover it where conditional vendee defaults in the terms of the contract. In taking possession of such property from a public street where conditional vendee parked it, the holder of such conditional sale contract does not violate the provisions of section 10292, Okla. Stats. 1931, 47 Okla. St. Ann. § 235, defining the offense of 'Interference with Standing Vehicle.'"

This proposition is argued under different headings. Requested instructions covering this and other kindred propositions were offered by the defendant, and refused by the court. As above stated all of these may be considered together.

The first proposition to be considered is, what is meant by a conditional sale contract? The Supreme Court of this state has had this question before it on many occasions, and to our mind the law of this state, as to what a conditional sale contract is, has been definitely settled, and also what the respective rights of the parties are to a contract of this character.

The Supreme Court has had before it for consideration this question in the following cases: General Motors Acceptance Corporation v. Vincent, 183 Okla. 547, 83 P. 2d 539; Leedy v. General Motors Acceptance Corporation, 173 Okla. 445, 48 P. 2d 1074; National Cash Register Co. v. Stockyards Cash Market, 100 Okla. 150, 228 P. 778; John C. Mondie v. General Motors Acceptance Corporation, 178 Okla. 584, 63 P. 2d 708; Haubelt v. Bryan & Doyle, 171 Okla. 338, 43 P. 2d 68; First National Bank & Trust Co. of Muskogee v. Winter, 176 Okla. 400, 55 P. 2d 1029; Phelan v. Stockyards Bank, 134 Okla. 13, 276 P. 175; C. Cretors Co. v. McMillan, 106 Okla. 260, 234 P.

189; Ealy v. General Motors Acceptance Corporation, 169 Okla. 95, 36 P. 2d 4; and see, also, In re Terrell, 8 Cir., 246 F. 743, 159 C. C. A. 45; Bailey v. Baker, 239 U. S. 268, 271, 36 S. Ct. 50, 60 L. Ed. 275; Lewis v. Valley Finance Corp. (Tex. Civ. App.) 17 S. W. 2d 138; Lynch v. Sable-Oberteuffer-Peterson, 122 Ore. 597, 260 P. 222, 55 A. L. R. 184; General Motors Acceptance Corp. v. Shuey, 243 Ky. 74, 47 S. W. 2d 968; Blackford v. Neaves, 23 Ariz. 501, 205 P. 587.

It is not necessary to quote from these cases as they may be read by those who desire. They establish the following principles:

First. That where property is purchased under a conditional sale contract, that the title to the property remains in the vendor until the terms and conditions of the contract are complied with by the vendee, and the full purchase price is paid therefor.

Second. That the vendor does not have an equitable lien on the property, but the property remains the property of the vendor until the full purchase price is paid therefor.

Third. That conditional sale contracts are not chattel mortgages, but are sales upon condition.

Fourth. Under a conditional sale contract the vendor has two remedies:

(a) He may treat the sale as absolute and maintain an action for the purchase price; or,

(b) He may rescind the contract and recover possession of the chattels. He cannot do both. He must elect which remedy he intends to pursue, and having done so no other remedy is open to him. Where an election is made it is final and irrevocable, irrespective of intent. Mondie v. General Motors Acceptance Corporation, 178 Okla. 584, 63 P. 2d 708.

Fifth. Under an express provision of the contract giving the vendor the right upon default to take possession of the property without resort to legal process, he may do so if he does not commit a breach of the peace, or an unlawful trespass. Lynch v. Sable-Oberteuffer-Peterson, 122 Ore. 597, 260 P. 222, 55 A. L. R. 180, and note following.

Sixth. Under the above decisions the Supreme Court of this state has definitely held that the taking of possession by the seller of an automobile parked upon the streets by the vendee, and where there was default in the conditional sale contract, was not a taking by force or by unlawful trespass, and was not illegal. Leedy v. General Motors Acceptance Corporation, 173 Okla. 445, 48 P. 2d 1074; Malone v. Darr, 178 Okla. 443, 62 P. 2d 1254; First National Bank & Trust Co. of Muskogee v. Winter, 176 Okla. 400, 55 P. 2d 1029.

Under the holding of the above cases, if the title to the property had not passed from the seller to the buyer, and no force was used by the agent of the seller in securing possession of the property, and the seller was the owner of the property, we are unable to see how an agent of the seller could be found guilty, under the statute above quoted, for doing that which he had a right to do under the law. Certainly the terms of this statute were not intended to apply to one who under the law had the legal title to the property, and by the terms of the contract was entitled to the possession of the same upon default of its terms.

It is contended that this is a harsh contract, and that point is conceded. But it is a contract entered into by the buyer of the property himself. He specifically agrees that the title to the property may remain in the seller until he fully complies with the contract by making full payment of the purchase price. If he complies with his agreement

he becomes the owner of the property. To hold otherwise would be in direct conflict with the decisions of the Supreme Court above cited. If there be any conflict in the decisions of the courts, the point has been definitely settled by the Supreme Court of this state, and we are of the opinion this court should follow the construction placed upon the term "conditional sale contract" by that court. In many states there has been enacted an act known as "The Conditional Sales Act", which governs the procedure under contracts of this character. Oklahoma has enacted no such statute. The Supreme Court has interpreted them in view of their specific terms, and the general law as applied to conditional sales contracts. The question is determined from the facts and circumstances of each particular contract. Malone v. Darr, 178 Okla. 443, 62 P. 2d 1254.

The only condition imposed by our statute, Oklahoma Statutes 1931, § 11906, 60 Okla. St. Ann. § 318, upon conditional sale contracts, are that it shall be necessary that the same, or a true copy thereof, shall be deposited in the office of the county clerk wherein the property shall be kept, or they will be void as to innocent purchasers, or the creditors of the vendee, and when so deposited it shall be subject to the law applicable to the filing of chattel mortgages. If it be held that this section is applicable to conditional sale contracts, then under section 11272, Okla. Stats. 1931, 46 Okla. St. Ann. § 52, the buyer would have the right to apply to the district court in order to enforce a "legal counterclaim or any other valid defense against the collection of the whole or any part of the amount claimed to be due." The court has the right to enjoin the advertisement and sale of the property under the terms of this statute. This would give an adequate remedy to the buyer, and would take much of the harshness provided for by the conditional sale contract as above stated.

From a reading of the section of the statute under which defendant was charged, and as above quoted, it is hardly conceivable that it was the intention of the Legislature to cover a charge such as the facts developed in this case. It is more likely that it was intended to punish those who entered parked automobiles for the purpose of "joy riding", or when an automobile is taken and used without an intention of permanently depriving the owner thereof, which would be theft or larceny. And while an intent may be inferred from the facts and circumstances, there is no fact or circumstance in the instant case to conclude that defendant had such intent to violate any statute when he entered and started the automobile in the instant case.

The brief filed by the state does not refer to, or attempt to answer, the rule announced in the cases decided by the Supreme Court of this state, and heretofore cited. The only contention made is that by reason of the evidence showing that the complaining witness, J. R. Whitten, had been issued a certificate of title for motor vehicles, under the Motor Vehicle Act, Session Laws 1937, chapter 50, article 7, 47 Okla. St. Ann. § 19a et seq., he was the owner of the property, and that defendant was therefore guilty under the section of the statute under which he was charged. As heretofore stated this position is in direct conflict with the decisions of the Supreme Court of this state in the cases heretofore cited, which directly hold that the assignee of the conditional vendor was the owner of the automobile therein involved, and after default was entitled to the possession of same, provided it was not taken by force, or unlawful trespass; and that the taking of the same from the street where it was parked, and without the knowledge or consent of the buyer, was not such force or unlawful trespass as was contemplated under the law.

In the next place it is hardly logical that the Vehicle License and Registration Act of 1937 was enacted for the purpose of determining the ownership of the vehicle, for which the license was to be obtained. It is not logical to suppose that the issuance of the certificate by the commission was a positive determination of the fact, as to who was owner of the title to the vehicle. This, to our mind, is very apparent from the terms of the Vehicle License and Registration Act, Session Laws 1937, chapter 50, art. 7, 47 Okla. St. Ann. § 19a, which reads in part as follows:

"Section 2. Definition

"The following words and phrases used in this act shall, for the purpose of this act, have the following meanings respectively ascribed to them: * * *

"(11) 'Owner'. Any person owning or possessing any vehicle, as herein defined."

. It will thus be noted that one "possessing any vehicle" is deemed the owner "for the purpose of this act". It is not a direct establishment of the fact that one is the "owner", who takes out the license. It could very easily be understood that the "owner" of a vehicle could deliver the "possession" of the same to another for the purpose of permitting him to take out a license and drive the same. Certainly the possession of one under a conditional sale contract would be such "possession" as would permit his purchasing of the license under said act. This is further demonstrated by the terms of the act. Section 4 uses the words "every owner or possessor".

The certificate of title issued by the Oklahoma Tax Commission, to the complaining witness, J. R. Whitten, provided: "That I am satisfied that the applicant is the lawful owner of the above-described motor vehicle, or is otherwise entitled to have the same registered in his name".

Also in the original application for the license it is stated:

"I, the undersigned, do solemnly swear (or affirm) that I am the owner, or legal agent of the owner, of the above described motor vehicle, and that the statements contained herein are true.

"(Signed) J. R. Whitten.

"Owner or Legal Agent of Owner."

King-Godfrey, Inc. v. Rogers, 157 Okla. 216, 11 P. 2d 935; Parrott v. Gulick, 145 Okla. 129, 292 P. 48.

It is contended that by reason of the fact that the evidence revealed that the Universal Credit Company had registered its contract under the provisions of the Oklahoma Mortgage Law, and had paid the taxes thereon that this showed an intention to treat the contract as a chattel mortgage and not as a conditional sale. In answer to this contention it may be stated that under Oklahoma Statutes 1931, § 12363, 68 Okla. St. Ann. § 511, it was not the intention to levy a tax upon security nor upon chattel mortgages, but a tax upon obligations evidencing an indebtedness regardless of whether or not such obligations are secured by a chattel mortgage, a conditional sale contract, or in other ways. In the brief of the state, it is stated:

"If it were not for the Motor Vehicle Registration Act we might agree with the plaintiff in error in his brief and the citation of authorities. * * *"

In the face of this admission, and the decisions of the Supreme Court of this state, in the case of Malone v. Darr, 178 Okla. 443, 62 P. 2d 1254, this question seems settled, for in that case the court held that under a chattel mortgage containing the provisions such as are quoted from the contract in the instant case, the "mortgagee has right to take possession after default without prior demands or

other notice than that required by mortgage, provided the seizure is made in peaceable and orderly manner without committing breach of peace, or resort to force, stealth, or fraud". In that case the automobile was parked in a public parking place and possession was taken by locking the car and without consent of the vendee. The car was then sold by the vendor. This decision was based upon the case of Leedy v. General Motors Acceptance Corporation, 173 Okla. 445, 48 P. 2d 1074, heretofore cited. See, also, Waggoner v. Koon, 67 Okla. 25, 168 P. 217, and, Goodman v. Schulman, 144 Misc. 512, 258 N. Y. S. 681, 683, which says:

"The law recognizes that personal property taken as a mortgage security, because of its transitory nature, can easily be lost, strayed, converted, or stolen. Realty cannot stray or be converted or stolen. Hence the law merchant recognizes the necessity of sanctioning summary methods of seizure to call in chattel mortgages. Were it otherwise, any system of credit extended upon chattels as security would be imperilled and perhaps break down. Cautious lenders would decline to lend on so insecure a collateral. Hence we have the principle that immediately on default the chattels are the property of the mortgagee, to seize as the mortgage provisions direct, and no other or further notice is required except as the chattel mortgage itself covenants."

As stated in Leedy v. General Motors Acceptance Corporation, supra [173 Okla. 445, 48 P. 2d 1075]:

"Many features of the 'contract' are harsh, contrary to public policy, void, and unenforceable; but the provisions authorizing vendor or his assignee to take possession, upon conditions broken, of property conditionally sold, is not one of these. Singer Mfg. Co. v. Rios, 96 Tex. 174, 71 S. W. 275, 60 L. R. A. 143, 97 Am. St. Rep. 901."

In the cited case Chief Justice Gaines of the Supreme Court of Texas, said [96 Tex. 174, 71 S. W. 276, 60 L. R. A. 143, 97 Am. St. Rep. 901]:

"Certainly no breach of the peace is likely to occur provided the mortgagor in such case does what he has contracted to do and what it is his duty to do, namely, in case of default to surrender the property upon demand of the mortgagee. On the other hand, should he make forcible resistance, this does not justify the mortgagee in using force to overcome his resistance. The law hardly proceeds upon the assumption that either party will violate his agreement, and that therefore a breach of the peace may arise. The proposition that such a stipulation is valid, and that the mortgagee may take peaceable possession of the property without the consent, and even over the protest, of the mortgagor, is sustained by the great weight of authority. The following cases are in point: Street v. Sinclair, 71 Ala. 110; Burns v. Campbell [71 Ala.] 271; Walsh v. Taylor, 39 Md. 592; North v. Williams, 120 Pa. 109, 13 A. 723, 6 Am. St. Rep. 695; White Sewing Mach. Co. v. Conner [111 Ky. 827], 64 S. W. 841 [23 Ky. Law Rep. 1125]; Heath v. Randall, 4 Cush. [Mass.] 195; Satterwhite v. Kennedy, 3 Strob. Law [S. Car.] 457; Nichols v. Webster, 1 Chand. [Wis.] 203. Such is the rule recognized by the text-writers. Jones, Chat. Mortg. § 434; 1 Cob. Chat. Mortg. § 510; Ping. Chat. Mortg. § 989; Boone, Mortg. § 276."

In following the decisions of the Supreme Court of this state, we are but carrying out the general understanding that in matters pertaining to the civil practice of the law the Supreme Court has exclusive jurisdiction, and those arising out of the criminal law this court has exclusive jurisdiction, and although this may be a harsh contract, yet if all the statutes are applied as above indicated, it may be stripped of much of its harshness.

The question of distinguishing between conditional sale contracts and chattel mortgages, and the meaning of these terms, is clearly one arising out of the civil branch of the law, and it is the desire of this court to follow the decisions of that court in matters arising out of the civil

branch of the law. From the decisions above cited we are of the opinion that court has clearly spoken.

For the reasons above stated, the judgment and sentence of the county court of Carter county is reversed, with directions to discharge defendant.

JONES, J., concurs. DOYLE, P. J., not participating.