was due to the peculiar construction described in the claims of the patents above referred to. Nor could I find, from the evidence, that that peculiar construction constituted the sole feature that made the mops a success in the market. Such finding would be required to sustain the complainant's theory of damages." The master was clearly correct in thus holding. The plaintiff complains that the master's report contains only negations, and omits to affirm what specific line of proof on the part of the plaintiff should have been adopted properly to establish his damages. It was not the province of the master, nor is it the province of the court, to suggest any specific line of proof, either as proper or necessary. The burden is on the plaintiff to lay a basis, by evidence, for ascertaining the proper profits or damages. If he produces certain evidence, and lays a certain basis, all that the master and the court are to do is to say whether he has made out his case or not. If he has not made out his case, that is all there is to be said. It cannot be said that there may not be many forms of evidence which would be satisfactory to show that a plaintiff is entitled to the profits on the whole machine. Their sufficiency is to be passed upon when they are presented.

It is also contended that the court did not pass on the first five exceptions taken by the plaintiff; but I think it quite apparent, that, in passing on the sixth and seventh exceptions, the court passed on the first five. The first claims that there was evidence of damages and profits; the second, that it was error to award only nominal damages; the third, that there was evidence of actual damages; the fourth, that there should have been a report of an amount of actual damages; the fifth, that there should have been a report of an amount of actual profits. I do not perceive that any of the considerations now presented on the part of the plaintiff were overlooked by the court in its former decision.

In the case of Herring v. Gage [Case No. 6,422], in this court, decided by Judge Wallace, the master reported that the defendants, in milling, saved, by using the patented device, one barrel of flour in every six hundred made, saving thus so many barrels, worth so much a barrel. He reported such saving as profits, and reported it as a saving made over and beyond the saving which the defendants could have made by the use of any other device. The plaintiff did not except, and the defendants did except that such finding was not supported by the proof. The proof given by both sides was as to the additional saving made by the use of the patented device, over what might have been made by the use of other devices for cooling and drying meal, as a substitute for the patented device. Judge Wallace remarked that it appeared that the defendants had saved, by the use of the patented device, flour which,

until they used that device, had been lost; and, in commenting on the rule laid down in Mowry v. Whitney, 14 Wall. [81 U. S.] 651, he said that that was a case where the entire profit of the manufacture had been given by the master, when such profit was largely due, not to the patented invention, but to other processes actually used by the defendant, and that the rule so laid down did not apply where the profit had been made directly by the use of the patented device. This case is like Mowry v. Whitney, and is not like Herring v. Gage. There is nothing in the decision in the latter case that is inconsistent with the rulings in the former decision in the present case. A plaintiff is required to separate between the patented part of what the defendant makes and sells and the unpatented parts, and not between such patented part and something which the defendant does not embody in his machine. The distinction is a plain one.

In its former decision [Case No. 5,248] this court directed that the plaintiff have the costs of the suit, except the costs of the reference before the master, and of his report, and of the exceptions, and of the hearing thereon; and that the defendants have the costs of such reference, and report, and exceptions, and hearing. The plaintiff alleges that the interlocutory decree provided that the plaintiff recover of the defendants "the costs of the complainant in this cause to be adjusted;" but it further provides that the question of the amount of such costs be reserved until the coming in of the master's report, and that a final decree be had for the same, together with the profits and damages which shall be finally adjudged to be payable to the plaintiff. It also awards a perpetual injunction to the plaintiff. In view of the award to the plaintiff of nothing but nominal damages and of no profits, it is not proper that the plaintiff should have any costs, except those to and including the interlocutory decree, and that the defendants should have the costs of the subsequent proceedings. There is nothing in this that is inconsistent with the interlocutory decree.

The prayer of the petition for a rehearing is denied, with costs.

[For subsequent proceedings, see Case No. 5,-249.]

GARRETSON (JENKS v.). See Case No. 7,-278.

## Case No. 5,251.

### GARRETSON v. LINGAN.

[2 Cranch, C. C. 236.] [1]

Circuit Court, District of Columbia. April Term, 1821.

SLAVERY—REMOVAL—LAPSE OF TIME.

Length of time does not raise a presumption against a slave, that his owner took the oath required by law.

[1] [Reported by Hon. William Cranch, Chief Judge.]

Petition for freedom. The petitioner [Jack Garretson, a negro] was carried, by his owner, from Maryland to Virginia, in the year 1784, and kept there several years, and then brought back to Maryland. By the law of Virginia of 17th of December, 1792 (page 186), the slave was entitled to his freedom, unless the owner took a certain oath within sixty days after his removal to Virginia.

Mr. Key and Mr. Caldwell, for defendant, moved the court to instruct the jury, that after such a lapse of time they have a right to presume that the oath was duly taken agreeably to law. The law did not require that there should be any record of the taking of the oath. It is a fact which may be proved by parol. Judge White in Virginia has decided in favor of the presumption.

Mr. Taney and Mr. Jones, contra, stated that there is a contrary decision in 5 Munf. 542, and that Judge Dade had decided in the same way. The presumption could arise only from the acquiescence of the petitioner; but that presumption is rebutted by the state of slavery in which he has been held, which disabled him from asserting his rights.

THE COURT (CRANCH, Chief Judge, doubting) refused to give the instruction.

---

GARRETSON (TAYLOR v.). See Case No. 13,792.

---

## Case No. 5,252.

### In re GARRETT.

[2 Hughes, 235; 11 N. B. R. 493.][1]

District Court, E. D. Virginia. Feb., 1875.

BANKRUPTCY—ALIMONY AS A LIEN ON BANKRUPT'S LAND—EXEMPTIONS—DISCHARGE—RELEASE FROM PAYMENT OF ALIMONY.

1. The bankruptcy court has no jurisdiction of alimony operating as a lien upon land belonging to a bankrupt's estate.

2. Where a state court has decreed a divorce, and provided alimony, the bankruptcy court will not increase or diminish the alimony, though chargeable upon the estate administered in bankruptcy.

3. In granting an exemption to the bankrupt, the bankruptcy court will order that it shall not affect or prejudice the wife's rights to alimony chargeable upon real estate claimed as homestead.

4. A discharge in bankruptcy does not release a husband from the obligation to pay alimony, though—

5. Quaere. Whether instalments of alimony due before the bankruptcy are released by a discharge in bankruptcy, as a personal liability of the bankrupt?

Prior to the Civil War, Edward and Phillis Garrett intermarried, and a number of children were born to them. In June, 1870, Phillis, by next friend, brought suit on the chancery side of the circuit court of Alexandria county, against Edward, for a divorce a vinculo matrimonii, setting forth, as the grounds, adultery, neglect, etc., and praying alimony and the custody of the children, all of whom were under age. The case was removed by consent to the corporation court of Alexandria city, where, in January, 1872, after hearing, the court entered a decree divorcing the parties a vinculo matrimonii, forbidding Edward to marry again, giving the custody of the children to Phillis, and directing Edward to pay to Phillis, during her natural life, for the maintenance of herself and children, the sum of nine dollars per month. The decree operated as a lien from the date it was docketed upon Edward Garrett's estate. The husband had neglected to pay the monthly instalments decreed, which were due since 1872. [In the county of Fairfax, Virginia (adjoining Alexandria), Edward owned a tract of land; and on the lien docket of that county this decree for alimony was entered, and, according to the law of the state, became a lien as early as 1872.][2] The husband filed his petition in bankruptcy on the 7th March, 1874, and was adjudicated a bankrupt on the 16th March. In January, 1875, at his instance, a rule issued calling upon his creditors to show cause why certain of his real estate bound by the lien of the decree for alimony should not be set aside to him as a homestead according to the constitution and laws of Virginia, and discharged from the claims of the wife. To this rule Phillis Garrett answered the facts as stated, and maintained that the marriage having occurred prior to the adoption of the constitution containing the homestead provision, the obligation to pay the alimony decreed could not thus be annulled, and that to allow the husband thus to avoid this obligation would be practically to use the law to defeat the very purpose which the convention had in view when the measure was adopted, viz.: the support of the family. Vide Code Va. 1873, c. 183, § 9, and Anthony v. Wade, 1 Bush, 110.

HUGHES, District Judge. The state court which rendered the decree mentioned was a court having full jurisdiction of questions of divorce and alimony, which this, the bankruptcy court, has not. That court was competent to render such decree, and the bankruptcy court has no jurisdiction, directly or indirectly, to review or modify or affect that decree. The lien of the decree directing the payment of alimony in monthly instalments is a continuing lien, similar in some respects to a ground-rent charge upon ground in which a homestead should be claimed. In this case it is superior to the claim of homestead; for, though the decree of alimony was itself subsequent in date to the adoption of the state constitution, which makes the homestead superior to judgments upon contracts made after its adoption, yet the marriage and birth of children, and therefore the contract

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

[2] [From 11 N. B. R. 493.]