UTICA,
August, 1829.

Chanoine
v.
Fowler.

## F. & H. CHANOINE vs. FOWLER.

THIS was an action of assumpsit by the payees against the drawer of a bill of exchange, tried at the New-York circuit, in June, 1828, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The bill bears date the 15th December, 1825, at New-York, and is drawn on Messrs. Phillipon & Co., Havre, for 6839 $\frac{32}{100}$ francs, payable to the plaintiffs or order. On the 26th January, 1826, it was presented for acceptance, which was refused for want of advice. It was presented by *huissier audiencer* (bailiff) of the tribunal of commerce at Havre, in the presence of two witnesses, and by him protested for non-acceptance, in conformity to the 173d and 174th articles of the Code of Commerce of France. The protest was signed by the *huissier* and the witnesses, but had no seal attached to it. The code was proved in this manner : A witness was produced, who testified that he was chancellor of the French consulate in the city of New-York, commissioned by the king of France, and produced a printed book, purchased by him at a book-store in Paris in 1825, which he testified contained the law of France, and corresponded with the official edition; that there was a copy of the laws in the office of the consulate, given to the consul by the government, by which the witness regulated his official acts, also corresponding with the book produced by him. The defendant's counsel agreed so to consider it, but objected to the evidence as insufficient to prove the law of France. The objection was overrulled.

The bill was purchased by the house of H. D. & E. B. Sewall for remittance, and was sent on the day of its date to the plaintiffs, who reside at Epernay, about thirty leagues east of Paris. The first intelligence that the Messrs. Sewalls

A protest of a bill of exchange by a *huissier* (an officer of a tribunal of commerce in France, authorized by the commercial code of that country to make protests) will not be received in evidence without proof of the code. The commercial code of France being written law, cannot be proved by the production of a printed book, admitted to be conformable to the official edition of the code published by the government. It seems that the same faith and credit would not be given to the protests of an officer unknown to the law merchant, that is given to the acts of a notary public, although the acts of such officer are in strict conformity to the laws of the country in which he resides, and such laws are duly proved; evidence beyond the production of the bill and protest would be required to shew the authenticity of the act.

Notice of the non-acceptance of a bill of exchange cannot be given by a stranger; it must be by a party to it, or by one who, on the bill being returned to him, would have a right of action upon it.

UTICA,
August, 1829.

Chanoine
v
Fowler.

had of the non-acceptance of the bill, was on the 4th or 5th of April, by letter from the plaintiffs, dated 25th February, 1826; though on the 18th April they received a letter, dated 1st February, 1826, containing the same information.

H. D. Sewall proved the receipt of the letters, and testified that he did not personally give notice of the non-acceptance of the bill to the defendant, but had no doubt that such notice had been given, as it was the custom of his house to give regular notice in such cases; that between the 4th or 5th and the 14th April, the defendant, in a conversation with him, spoke of the bill, and was then aware that it had not been accepted; he said that it would be [paid, and did not complain of want of notice. This witness stated that it took two days for the mail to go from Havre to Epernay; that the regular packet sails from Havre on the first of February, and that the passages at that season of the year are from 30 to 60 days. The plaintiffs rested. The defendant moved for a nonsuit, which was denied.

The defendant then proved by a witness produced by him, that he (the witness) was a merchant in the French trade; that on the 23d day of March, 1826, he received in the city of New-York, by a regular packet, (the Bayard) which left Havre on the 2d February, a letter dated 31st January, 1826, and that another packet left Havre on the 15th February; that he also bought a bill of the defendant on Phillipon & Co. and remitted it on the 15th December, 1825, to Paris, from whence it was sent to Havre to be accepted; and that he received notice of protest from a notary.

The judge, in charging the jury, instructed them that if the defendant had information in due time of the non-acceptance of the bill, no matter how he got it, it was good. The defendant excepted. The jury found for the plaintiff for the amount of the bill, with interest, damages, &c.

*M. C. Patterson*, for defendant. A foreign bill of exchange must be presented and protested by a *notary*; to whose acts, but not to the acts of any other officer, general credence is given in such cases. (3 Burn's Eccl. Law, and Jacob's L. D. tit, Notary. Molloy, 281. Salk. 131. Ld. Raym. 993. 6 Mod. 80. 4 Camp. N. P. 129. Chitty on Bills, 215, 16.

4. T. R. 175. 1 Phil. Ev. 301. Peake, 73. 3 Johns. R. 311. 2 H. Black. 275.) Courts do not judicially take notice of the seal of a foreign tribunal; much less will they give verity to the mere signature of an officer not known to the commercial law. If, by the laws of France, the protest was properly made, such laws should have been proved in the manner that foreign laws are required to be proved. The evidence of the officer of the French consulate amounted to no more than a certificate of a consul that such was the law, which has been adjudged insufficient. (1 Cranch, 138. 2 id. 137, 237. 1 Johns. R. 385.) Notice to the drawer of the non-acceptance of the bill was not shewn. The evidence amounted to a bare presumption that such notice was given, which is not enough. Even knowledge of the fact brought home to the drawer, is not equivalent to notice. (4 Barn. & Cres. 339. 14 Mass. R. 116. Bayley, 161, 163. 8 Taunt. 92. 3 Bos. & Pul. 239. Doug. 515. 11 East, 116. 7 Vesey, 597. Chitty on Bills, 226.) Consequently, the charge of the judge was erroneous.

*W. Slosson*, for plaintiff. In default of a notary, a protest may be made by any officer whom the law merchant recognizes; and in the case of a foreign bill, the production of the bill and protest is sufficient, without other proof, to charge the party. (2 Phil. Ev. 265, 566. Chitty, 217. Bayley, 385. Peake's Ev. 342.) A notary's seal is not necessary to a foreign protest. (Molloy, 281, book 2, c. 10, § 25. Malyne, 273. 12 Mod. 345. Cunningham on Bills, 40.) Where a protest is made, though not by a notary, if regular on its face, courts will sustain it, and receive it as evidence of the facts contained in it. It is of necessity it should be so, on account of the intolerable inconvenience to which parties would otherwise be subjected in producing proof.

The evidence of the chancellor of the French consulate, and the production of the code, admitted to be a copy of that in the consul's office, delivered to him by the government of France, was as high and conclusive evidence of the law of France as could be offered. The commercial code being incorporated into the Code Napoleon, cannot be proved in the

*Margin:* UTICA, August, 1829.

Chanoine
v.
Fowler.

UTICA,
August, 1829.

Chanoine
v.
Fowler.

usual way of proving foreign written laws, without the production of the whole code. This surely will not be required. Several late decisions in England go far to shew that the evidence on this point was sufficient. (1 Dowling & Ryland, 38. 3 Starkie's R. 178. 30 State Trials, 514.)

There was due notice of the dishonor of the bill. There were no *laches* in France ; and previous to the 14th April, the drawer knew that it had not been accepted. Such knowledge was correctly submitted to the jury ; they have passed upon it, and the court will not disturb their verdict. An endorser has rights in relation to notice, and the person giving it, which the drawer has not. To the latter, it is immaterial from whom the notice comes ; the real question being, was he apprized of the non-acceptance, so that he might secure himself? (Selwyn, 253, note by Wheaton. 2 Campb. N. P. 273. 4 id. 87. 1 Starkie's N. P. 34. Chitty on Bills, 227, 8. 18 Johns. R. 327.)

*By the Court,* MARCY, J. Several questions arise in this case. Those which it is necessary to consider are the following:

I. Was there the proof that the bill of exchange was regularly protested for non-acceptance ?

II. Was sufficient notice of the protest given to the defendant ?

The custom of merchants requires that there should be a protest in case of the non-acceptance of a foreign bill of exchange ; and the proper officer to make this protest is a notary public, unless it is to be made at a place where there is no notary ; and then it may be by a substantial person of such place, in presence of two or more witnesses. (Bayley on Bills, 165.) The bill on which this action is brought, does not purport to have been protested by a notary ; and there is nothing in the case to shew, nor is it pretended that the protest was made at a place where there was no resident notary ; but it is said the bill was duly protested according to the provisions of the commercial code of France. In answer to this, it is contended, on the part of the defendant, that there is no proof that the protest was made

pursuant to the provisions of that code, and that if it was so made, it was not a sufficient protest according to the custom of merchants.

As the plaintiffs endeavored to establish their right to recover by shewing a protest, made not in the usual manner recognized by the general commercial law, but, as they alleged, according to the particular code of France, it was incumbent on them to prove that code.

A foreign law, if it be unwritten, is to be proved as a matter of fact, and this is done by examining some intelligent person of the country whose law is to be proved. (2 Starkie's Ev. 569. 1 Johns. R. 394.) The French commercial code is not an unwritten law, and it could not therefore be established by this mode. It is known to be a digested code, and to prove it the plaintiffs introduced the chancellor of the French consulate at New-York, who produced a book in the French language purporting to contain this code. It was not the official edition of the laws of France, but the witness stated that it was conformable to that edition, and that he regulated his official conduct by the laws contained in the book he produced. He also stated that it was an exact copy of the laws furnished by the French government to its consul at New-York, and the defendant agreed so to consider it. The proof in this case is then, by the agreement of the parties, the book furnished by the French government to its consul at New-York, purporting to be conformable to the official edition published by that government. In the recent case in this court, of *Packard* v. *Hill,* (2 Wendell, 411,) it is decided that the written laws of a foreign state must be proved by an exemplification, and cannot be proved by the printed statute book of such state. In that case a printed book, purchased in the Havanna, purporting to contain the royal charter establishing the court of *consulado,* was declared to be incompetent evidence of that charter. This decision is in conformity to the doctrine laid down by the supreme court of the United States, in the case of *Church* v. *Hubbard,* (2 Cranch, 236.) In that case, two edicts of the crown of Portugal were produced, certified by the consul at Lisbon, under his official seal, to be copies of the originals. This was

adjudged to he insufficient proof of these edicts. The court say, " The consul was not sworn ; he has only certified that they (the edicts) are copies from the originals. To give his certificate the force of testimony, it will be necessary to shew that this is one of those consular functions to which the laws of this country attach full faith and credit. It is further said, that " though consuls are officers known to the laws of nations, and entrusted with high powers, they have not the power of authenticating the laws of foreign nations. They are not the keepers of those laws. They have no official copies of them." The book of laws in the possession of the French consul at New-York, is not evidence of the laws of France. Without these laws were proved, there was nothing to shew that the *huissier* had any authority to protest the bill of exchange on which this suit was brought.

It may be proper to consider the effect of the protest mentioned in this case, on the assumption that it was made pursuant to the commercial code of France. Where the laws of a particular country have designated the officers who are to make protests of bills, and regulated the manner in which it is to be done, protests made by such officers, in the manner prescribed, would undoubtedly be regarded in every other country as valid ; but the court are inclined to the opinion, that as these officers are unknown to the custom of merchants, their acts ought to be authenticated. It would be an innovation, perhaps a dangerous one, to give to the acts of any person who might be authorized to protest foreign bills by a law or regulation of any particular country, the same faith and credit that is given to those of a notary public, whose functions, so far as they relate to commercial transactions, are not created by the laws of any particular state, but by the custom of merchants, which is in fact the commercial law of nations. I am therefore of opinion that the bare production of the papers on the trial, purporting to be the proceedings of the *huissier*, without authentication, was not sufficient evidence of his performance of the acts stated in them.

To determine whether the defendant had legal notice of the non-acceptance of the bill, it will be necessary to

see when it was given, and from whom it came. Messrs. Sewalls had transmitted the bill to France, and received information of its non-acceptance on the fourth or fifth of April. H. D. Sewall says he did not himself give notice thereof to the defendant, nor does he know that notice was given by his house; although it was their custom to give notice in such cases, and he has no doubt the defendant received it. He learned, from a conversation with the defendant between the time of receiving notice and the 14th of April, that he had knowledge that the bill was dishonored. The judge, at the trial, ruled that the defendant had notice in due time of the non-acceptance of the bill, it was no matter whence it came, it was available to the plaintiffs. The rule of law in relation to the notice was, I apprehend, laid down in a manner too broad and unqualified. The rule has heretofore fluctuated; but it never has been authoritively stated, as I can find, to be as the judge laid it down on the trial, except in the case of *Shaw* v. *Coates*, at the sitting before Lord Kenyon, mentioned in Selwyn's 'N. P. 320, n. 25. Repeated decisions since, both in *term* and at *nisi prius*, have qualified and restricted the broad proposition of the judge in this case, and of Lord Kenyon in the case of *Shaw* v. *Coates*. In some instances, it has been decided that the holders or their agents are the only persons to give notice of the dishonor of bills; but it seems to be now settled that it is not absolutely necessary that the notice should come from the holder of a bill, but may be given by any person who is a party to it, and who would, on the same being returned to him, have a right of action on it. (Chitty on Bills, 229. 2 Campb. 273. 1 Stark. R. 29. Bayley on Bills, 161.) A notice from a mere stranger is not sufficient; and the charge of the judge was broad enough to sanction such a notice. For the insufficiency of the proof of the French commercial code and of the protest of the bill, and the misdirection of the judge as to the notice, a new trial ought to be granted.

New trial granted.