## HENRY WARREN *vs.* ALLEN GILMAN.

Where a bill is left in a bank for collection, although the bank has no interest in it, yet for the purposes of making a demand, and of receiving and transmitting notices, they are to be considered the real holders.

In the negotiation of this business, the cashier is the regularly authorized agent of the bank; and any communications affecting them, are properly addressed to him in his official capacity.

A notary employed for that purpose by the cashier of a bank, to which the bill has been indorsed and transmitted for collection only, has sufficient authority to make a demand, and to give notice.

If due notice of the presentment and non-payment of a bill be given to an indorser, it is not necessary that he should also be notified, that the holder will look to him for payment.

Where a bill which was drawn, accepted and indorsed by residents of *Bangor* and made payable at a bank in *Boston,* was indorsed to a bank in *Bangor,* and by that bank indorsed and transmitted to a bank in *Boston* for collection, and was by direction of the cashier of the latter bank duly presented there for payment by a notary, and notices thereof and of non-payment were immediately made out by him to all the prior parties, and transmitted by the first mail to the cashier of the *Bangor* bank; and where on the same morning the notices reached *Bangor,* the cashier took them from the post-office, and directed one to the indorser, then a resident of that city, and immediately replaced it in the post-office; *it was held,* that as the notice came from the notary in *Boston,* that this mode of transmitting it was sufficient.

THIS action was referred to *J. Cutting, Esq.* who awarded that the plaintiff should recover of the defendant the sum of $481,93, and costs, unless from facts proved before him, and which were stated in his award, the Court should be of the opinion that the plaintiff could not maintain the action.

The action was brought against the defendant as the indorser of a draft of the following tenor. " *Bangor, June* 30, 1836. Thirty days from date, value rec'd, please pay to the order of *Allen Gilman,* at the *Suffolk Bank* in *Boston,* four hundred dollars.

" Yours, &c. *Samuel A. Gilman.*

"*Charles Gilman, Bangor, Me.*"

The bill was accepted by *C. Gilman,* and indorsed by the defendant, and also as follows. " Pay *M. S. Parker,* Cashier, or order, *John Wyman,* Cashier." The plaintiff proved by the deposition of *William Stevenson,* a notary public residing in *Boston,* as well as by the original protest of *Stevenson,* if admissible, that on the second day of *August,* 1836, the bill was duly presented by him at the *Suffolk Bank* for payment, which was refused, whereupon he duly protested the bill for non-payment, *and sent notices of the non-payment thereof* to the drawer, accepter and indorser, to *John Wyman, Esq.* Cashier, per mail to *Bangor, Maine, requiring payment of them respectively,* which bill was presented and protested by *Stevenson,* at the request of the said *M. S. Parker,* Cashier, the last indorsee. *John Wyman* testified, to be received if admissible, that the bill was left by the plaintiff in the *Penobscot Bank* in *Bangor* for collection, on the 16th day of *July,* 1836, and that on the 19th day of the same month, he, as cashier of the *Penobscot Bank* indorsed the bill and forwarded it to the *Suffolk Bank* for collection ; that after the bill was protested, it was returned to him, as well as the notices spoken of by *Stevenson ;* that he received the notices from the post-office in *Bangor* on the morning of the fifth of *August,* 1836, inclosed in a letter from *Stevenson,* but was unable to fix the time when he received them, otherwise than that he knew he received them in due course of mail, which would be on the morning of the 5th ; that on the same morning on which he received them he directed and left the one for *Samuel A. Gilman* at his store in *Bangor ;* and that he directed the other for the defendant, and either gave it to him in person on the same morning of receiving it, or having sealed and directed it to him, put it into the post-office in *Bangor* that morning. *John Bright,* assistant postmaster at *Bangor,* testified, that during the months of *July* and *August,* 1836, the defendant kept a box at the post-office from which he was in the habit of daily

receiving his letters; that on the fifth day of *August,* 1836, the
western mail arrived at five o'clock, A. M. which was about the
usual time at that season. All the parties to the bill resided in
the village of *Bangor,* except *M. S. Parker,* whose residence was
in *Boston.*

*Rogers,* for the defendant, objected to the right of the plaintiff
to recover: —

1. That it should affirmatively appear, and not be left to infer-
ence, when the notices were put into the mail, and when received.
Notice is of the essence of the contract, and ought not to rest upon
presumption and inference. 7 *Hals.* 268; 3 *Gill & John.* 474.

2. *Wyman* was not a party to the bill, and upon its being re-
turned to him, he could not have maintained an action upon it.
*Chanoine* v. *Fowler,* 3 *Wend.* 173; *Stanton* v. *Blossom,* 14
*Mass. R.* 116. The notices should have been sent to the *Penob-
scot Bank.* *Wyman* was a mere agent, and not a party, and no-
tice through him to the defendant should have been as early, as if
sent directly through the mail. *Sewall* v. *Russell,* 3 *Wend.* 276.

3. Notice was not sufficient, being only, that the bill was pro-
tested for non-payment, and not that the holder looked to him for
payment.

4. The notice was not sufficient, being left at the post-office in
the same city, and not at the dwellinghouse or place of business
of the defendant. 10 *Johns. R.* 491; 20 *Johns. R.* 372; 1
*Conn. R.* 329; 3 *Conn. R.* 89; 1 *Stark. R.* 314; 2 *Peters,* 96.

5. As a notice from *Stevenson,* it was not received in season.
Being put into the post-office in *Bangor* after the distribution of
the mail, it would not go into the defendant's box until the next
day, one day too late. As a notice from *Wyman,* it is defective in
coming from a stranger who could maintain no action upon it, and
because it was *Stevenson's,* and not his. *Chitty on Bills,* (8th
*Am.* from 8th *Lon. Ed.*) 527.

6. If *Wyman* was not a party to the bill, but a stranger, the
protest is defective in not showing notice; and this defect cannot be
supplied by parol. *Phœnix Bank* v. *Hussey,* 12 *Pick.* 483.

*J. Hodsdon,* for the plaintiff, contended, that as the case was re-
ferred in the usual way to the referee, and he had decided in favor
of the plaintiff, unless the Court should come to a conclusion that

he was wrong in his decision, that the Court ought not to re-examine the case, but order judgment on the report. 3 *Mceson & W.* 332. But if the question is to be decided by the Court, as referees, they should order judgment for the plaintiff. The first objection is founded on an erroneous view of the facts. The witnesses are positive and direct in their statements. As to the second: *Wyman* was the immediate indorser to the *Suffolk Bank,* and the notices were to him in the usual and proper manner. A cashier receiving a bill for collection, is entitled to the same time as an owner, to notify prior indorsers. *Mead* v. *Engs,* 5 *Cowen,* 303.

As to the third. It is enough to notify the party to be charged on the non-payment. *Lindenberger* v. *Beall,* 6 *Wheat.* 104 ; *Miller* v. *Hackley,* 5 *Johns. R.* 375 ; 11 *Wheat.* 431. As to the fourth. Notice to an indorser may be by mail in all cases except where the parties reside in the place where the bill is made payable. 3 *Conn. R.* 489 ; 1 *Campb.* 246. As to the fifth and sixth, he merely cited *Dickens* v. *Beall,* 10 *Peters,* 578.

The opinion of the Court was by

WESTON C. J. — Where a bill is left in a bank for collection, although the bank has no interest in it, yet for the purpose of receiving and transmitting notices, they are to be considered as the real holders. *Mead* v. *Engs,* 5 *Cowen,* 308, and the cases there cited. In the negotiation of this business, the cashier is the regularly authorized organ of the bank, and whatever is done by him in that capacity is the act of the bank ; and any communications affecting them, are properly addressed to him in his official capacity.

It was never doubted, that notice might be given by the holder or his agent, but in *Chanoine* v. *Fowler,* 3 *Wend.* 173, it was held, that it was not absolutely necessary that it should come from the holder, but that it might be given by any one, who is a party to the bill, and who would on the same being returned to him, have a right of action on it. In *Stanton & al.* v. *Blossom & al.* 14 *Mass. R.* 116, it was held, that notice must come from the holder of the bill, or from one authorized by him, or from one liable as indorser.

The bill in question was left for collection in the *Penobscot Bank.* The cashier of that bank, in pursuance of the trust con-

fided in him, indorsed the bill to the cashier of the *Suffolk Bank,* where it was made payable, and remitted it to the latter bank for collection. According to the usage in these cases, we doubt not both the cashiers became, for the purpose of collection, nominally parties to the bill. *Hartford Bank* v. *Barry,* 17 *Mass. R.* 94. But if the plaintiff, who had the beneficial interest, is to be regarded as the holder, the cashiers became his authorized agents, acting in behalf of the banks they respectively represented.

*Mr. Stevenson,* the notary employed on this occasion, was duly called upon to act in his official capacity by the cashier of the *Suffolk Bank.* Notices, coming from him, affect the parties intended to be charged. It appears from the protest, as well as from the deposition of the notary, that on the second of *August,* 1836, the day of the maturity of the bill, the notary demanded payment at the *Suffolk Bank,* which being refused, and the bill duly protested, he thereupon sent notices by mail, to *Wyman,* the cashier of the *Penobscot Bank,* at *Bangor.* There is no other date, to which these proceedings are referred, but the second of *August,* and the fair import of the language seems to require, that it should be so understood. But if any doubt could be raised upon this point, we think that it is rendered certain by the testimony of *Wyman.*

If the notary forwarded his notices by the first mail, after the protest, they must have arrived on the morning of the fifth, and such *Wyman* testifies was the fact. He adds, that the only reason he had, for being able so to testify, was, that he knew the notices were received in due course of mail. And he positively testifies therefore, that they must have arrived on the morning of the fifth. He explains what he means by due course of mail. Without such explanation, so far as it depends upon his testimony, the point might have been left uncertain ; but as explained, his testimony proves, that the notices were received on the morning of the fifth, which must have been the first mail after the protest.

The notice for the defendant, enclosed by the notary, was either delivered to him in hand, or after being sealed and directed, left for him at the post-office, by *Wyman,* the same morning it arrived. The notice is not proved, so as to charge the defendant, unless either mode was sufficient. If delivered to him in person there

Warren *v.* Gilman.

could be no question ; and we are of opinion, that the notice coming from the notary, the post-office was a proper channel of communication.

No want of diligence is imputable to the cashier. He received and opened the whole package directed to him, and the same morning returned to the post-office, with proper directions, the notice enclosed, prepared for the defendant. Whatever strictness of construction, on the question of notice, may have obtained upon some points, it appears to us, that the notice to the defendant is sufficiently made out, by proving, that having been prepared and duly forwarded by the notary, it was ready for him, properly directed, at the post-office in *Bangor,* on the morning of the fifth of *August.*

It is objected, that it does not appear that the defendant was apprized by the notice, that the holder looked to him for payment. We are not aware that this formality is required. He was entitled to notice of the dishonor of the bill ; but was bound to know the legal consequences. The rights of the holder would remain the same, whether he intended to enforce them or not. In the *Bank of the United States* v. *Carneal,* 2 *Peters,* 543, it was held, that the holder need not notify an indorser, that he held him liable.

*Exceptions overruled.*