### IRA CROCKER *versus* EDMUND GETCHELL.

It is sufficient for the holder of a bill or note to notify his immediate in-dorser, without any limitation as to the place of his residence, and he is under no obligation to do more, unless he desires to charge other parties; and such indorser, on receiving the intelligence, should in due season notify the next preceding indorser, and those whom he would charge. And this course may be followed by all the parties however numerous.

And if the holder of a note or bill leaves it with a bank or an individual, residing in a different city or town, as an agent for the collection thereof, such agent is for that purpose to be considered as a party, and is bound only to notify his principal in due season.

But if the holder of the note should employ agents whose residences, or places of business, are so distant from those of the parties to the paper, that the transmission of notices through them would necessarily occasion great and unnecessary delay, it might be evidence of a want of due diligence, or even of a fraudulent or vexatious attempt to injure a party, under the pre-tence of using due diligence.

A mistake in a notice of the dishonor of a bill or note, does not render it invalid, if it do not mislead the party to whom it is directed.

If an agent makes sale of property of his principal, and in payment to the owner therefor indorses a note, which was not taken for the property sold, or any part thereof, such agent cannot set up want of consideration in de-fence of an action against him as indorser.

Parol testimony cannot be received to vary the legal effect of an indorse-ment in blank upon a bill or note.

THE facts in the case appear in the opinion of the Court. The notice to which objection was made was as follows:

" Augusta, Dec. 29, 1836.

Sir — Please to take notice, that Wheeler & Perkins' note, dated August 25, 1836, for fourteen hundred and ninety-one dollars and ninety cents, payable in four months, became due this day, and is protested for non-payment, and that the holder looks to you as indorser for the same.

" D. Williams, Not. Pub.

" Edmund Getchell, Esq."

*Howard & Shepley*, for the plaintiff, contended:

That the Cumberland Bank was to be considered the real holder of the note for the purpose of receiving and transmit-ting notices, although it was held for collection only. Chitty on Bills (8 Am. Ed.) 520.

Crocker v. Getchell.

The notary was agent of the holder, and should cause the notices to be transmitted to his principal, although direct notice to the indorser would reach him sooner. The agent is not required to look beyond his principal. Bayley on B. 267; 5 Mass. R. 169; 8 Pick. 54; 9 Pick. 549; *Lord* v. *Appleton*, 3 Shepl. 270; *Warren* v. *Gilman*, 5 Shepl. 360; 5 Cowen, 305; 1 Hill, 264.

The notice was sent sufficiently early. Each party is entitled to one day to transmit notice to a prior indorser. Chitty on B. 519; Bayley on B. 263; 4 Shepl. 453; 5 M. & S. 68; 9 East, 347.

A mistake in the notice does not invalidate it, if it do not mislead the party. Bayley, 253; 12 Mass. R. 6; 1 Pick. 401; 3 Metc. 498; 2 Peters, 543; 2 Hill, 593.

Mere delay to call on the principal does not discharge an indorser. *Page* v. *Webster*, 3 Shepl. 249.

The legal effect of a blank indorsement is well known and established, and can no more be contradicted by parol evidence, than the direct expressions of the contract. 9 Pick. 550; 8 Greenl. 213; 8 Johns. R. 148; Bayley, 150.

The consideration is sufficient. The defendant had sold logs belonging to the plaintiff, and had become accountable to him for the amount of sales. This note was not taken for the plaintiff's property, but for the defendant's own, and indorsed in payment of a debt.

*Fessenden, Deblois & Fessenden,* for the defendant, contended: — That the defendant was not liable, because he was not seasonably notified that a demand had been made on the promisors, and that they had refused or neglected to pay.

Notice should have been sent directly from Augusta to Waterville. *Freeman's Bank* v. *Perkins*, 6 Shepl. 292; 20 Johns. R. 372; 3 Hill, 560. And more especially as in this case the notary knew where the defendant resided.

The notice does not state that a demand had been made, as it should. 3 Metc. 495.

If the party employs an agent, he can have no more time than if he performed the act in person. If the plaintiff had

made the demand personally, he must have sent by the next mail to Waterville, or gone and given personal notice. The party is not at liberty to make as many agents as he chooses, and send over the country. This would operate oppressively and unjustly. An agent is not a party, or entitled to the privileges of one, but a mere servant, acting for his master. 4 Car. & P. 200; 6 Shepl. 292; 5 Cowen, 303; 23 Pick. 331.

It does not appear, that the notices were sent by the first mail of the succeeding day as the law requires. 15 Maine R. 70; 20 Maine R. 24; 17 Maine R. 381.

The demand, if any, was made one day too late. 3 Metc. 495. If the notices were to be given to the defendant from Portland, they should have given their own, and not have sent those of the notary.

There was no consideration for the indorsement of the paper. The indorser may set up want or failure of consideration against his immediate indorsee. 2 Stark. R. 145 & 270; 1 Esp. R. 261; 5 Mass. R. 302; 5 Pick. 391; 6 Pick. 259; 7 Johns. R. 384; 9 B. & Cr. 241.

·The defendant was not bound to make himself liable, as he acted merely as the agent of the plaintiff. 1 Campb. 100; Chitty on B. 81; 3 Campb. 376; 4 Metc. 475; 5 Cowen, 474; 4 Greenl. 542; 3 Shepl. 340; 6 Shepl. 361; 5 Pick. 7; 3 Mason, 232.

Nor can it be objected to the showing of this want of consideration, that the note being indorsed in blank without any qualification, parol evidence cannot be admitted to show the want or failure of consideration. 10 Johns. R. 231; 7 Cowen, 322; 4 Johns. R. 301; 6 Mass. R. 431; 11 Conn. R. 213.

The opinion of the Court was drawn up by

SHEPLEY J. — The plaintiff as indorsee has brought this suit against the defendant as indorser of a promisory note, bearing date on August 25, 1836, made by Messrs. Wheeler & Perkins of Augusta, payable to the defendant or order in four months, and by him indorsed in blank. It was also indorsed by Ira D. Bugbee, as cashier of the bank of Cumber-

land, and transmitted to the cashier of the Augusta Bank for collection. Mr. Williams testified, that he received it from the cashier on December 28, 1836, after bank hours, and as a notary presented it to the makers for payment, which was refused; and that he made out notices to the defendant and to Bugbee, and delivered them to the cashier of the Augusta Bank with his protest. That the notices were intended to show the true date of the protest, and that he had no reason to doubt, that they did. The notice directed to the defendant was produced at the trial, and was dated December 29, 1836, the day after the last day of grace. It was directed to the defendant by the notary without designating his place of abode, and on the back it was directed to the defendant at his place of residence in Winslow, Me. in the handwriting of Bugbee. The post mark upon it was "Portland, Me. Dec. 31." It was admitted, that the mail was at that time carried daily from Portland to Augusta, and from that place to Waterville, leaving Portland at six o'clock, A. M. and from Augusta to Portland daily; leaving Augusta about one o'clock, P. M. The jury have found, that payment was demanded of the makers on the last day of grace. It may be, that the notices were not made out until the next morning, and that they bear the true date of the day, on which they were made. And that would be in season, if they were forwarded by the mail of the day following the day of dishonor. That the notice directed to the defendant must have been sent to Portland as early as by the mail of the 29th, is apparent; for it could not otherwise have been received in Portland on the morning of the 30th, and have been delivered to Bugbee, after the mail for that day had left for Augusta, and have been by him directed to the defendant at Winslow and returned to the postoffice on the same day, that it might be forwarded to Augusta by the mail, leaving Portland on the morning of the 31st. The notice was therefore transmitted to the defendant in due season, if the mode adopted of forwarding it first to the cashier at Portland was authorized by law. The indorser of negotiable paper is presumed to know, that the very purpose to be ac-

Crocker *v.* Getchell.

complished is, to facilitate its transfer from man to man in the usual course of business, without any limitation as to the places of their residence. It is sufficient for the holder to notify his immediate indorser, and he is under no obligation to do more, unless he desires to charge other parties. And such indorser on receiving the intelligence, should in due season notify the next preceding indorser, and those, whom he would charge. This course may be followed by all the parties however numerous. And the first indorser may thereby receive notice many days later, than he would, if the holder were required to notify him. If the Augusta Bank therefore be regarded as the holder of the note, it was under no legal obligation to notify the defendant, if his place of residence were well known; but might notify the Bank of Cumberland as the last indorser. And a notice from the latter bank sent by the mail of the day following that, on which it received intelligence of the dishonor to the defendant, would be in season. If the banks be regarded as the agents of the plaintiff, employed to collect the notes, must a different course be pursued? The plaintiff, had he presented the note for payment in person, must have forwarded a notice to the defendant by the mail of the following day. And it would seem to be an enlargement of his rights to allow him to employ an agent to do it, and thereby avoid that responsibility, and it may be to the injury of the defendant. And yet a bank or other holder of numerous bills and notes, could not be expected to be at the residence of each acceptor or maker to present the paper for payment. Agents must of necessity be employed. Such agents or special messengers could not always be safely entrusted to prepare and forward the notices in case of non-payment. If bankers were employed as agents, they would regard their duties as performed by forwarding notice to their customers. And the rule has been established in England, that it is sufficient for the banker to send notice to his customer, and for him on the receipt of that intelligence to give notice by the mail of the next day to such parties, as he would charge. *Langdale* v. *Trimmer*, 15 East, 291; *Haynes* v. *Birks*, 3 B. & P. 599; *Daly* v. *Slater*, 4

C. & P. 200.   And the mercantile law appears to have been conformed to mercantile convenience, so far as to allow other agents to be employed upon like responsibilities.   *Church* v. *Barlow,* 9 Pick. 549 ; *Mead* v. *Engs,* 5 Cowen, 305 ; *United States Bank* v. *Goddard,* 5 Mason, 366.   The counsel for the defendant insist, that the latter case may be distinguished from this, because the bank presenting the note for payment was ignorant of the residence of the indorser, and did not undertake to notify him.   But neither that, nor the other cases, appear to have been decided upon any such distinction.   On the contrary Mr. Justice Story says, " the doctrine is laid down without exception, that the agent is not bound to give notice ; and if any exception had existed, it could not for so long a period have been overlooked."   The remark of Weston C. J. in the case of *Freeman's Bank* v. *Perkins,* 6 Shepl. 295, " if either knew the residence of the indorser, his notice should have been sent to him directly at Hallowell, through which the mail passes, in its transit to Augusta," it is apparent, was designed rather to exhibit their duties, than to declare the law ; for he had before stated in the same opinion, that " the cashier of the Suffolk Bank would have done his duty, if he had caused notice to be given to the plaintiffs, of whom he received the bill."   The Augusta Bank, therefore, if regarded as an agent for collection, performed all its duty by sending a notice to its principal by the mail of the day after the dishonor. And the Bank of Cumberland in the place of the plaintiff performed all the duties incumbent on him by forwarding a notice to the defendant by the mail of the day following the reception of such intelligence.

It is however contended, that it should have forwarded a notice made out and signed by its cashier instead of sending the notice made out by the notary.   There was no delay occasioned by the use of the notary's notice.   And the notice of a notary or of any other party to the note forwarded in due season would be sufficient.   *Bank of the United States* v. *Carneal,* 2 Peters, 543 ; *Chanoine* v. *Fowler,* 3 Wend. 173. It is not intended to decide, that the holder may employ banks

or other agents for the purpose of collection, whose residences or places of business are in distant cities or places, so far from the residences of the parties to the paper, that the transmission of notices through them would necessarily occasion great and unnecessary delay. Such a procedure might be evidence of a want of due diligence, or even of a fraudulent or vexatious attempt to injure a party under the pretence of using due diligence.

It is also contended, that the notice sent to the defendant was not sufficient, because it did not state, that a demand had been made upon the makers, and because it stated, that the note became due this day, bearing date on the 29th. It stated, that the note " became due this day, and is protested for non-payment, and that the holder looks to you for the same. In the case of *Mills* v. *The Bank of the United States,* 11 Wheat. 431, the language used in the notice was, that the note " on which you are indorser has been protested for non-payment, and the holders thereof look to you." And that was decided to convey sufficient notice, that payment had been demanded and refused. The note in that case was dated " 20th July, 1819." The notice stated, that it was " dated 20th day of September, 1819," and in all other respects described it correctly. The description in the notice was considered to be sufficiently accurate to convey to the party knowledge of the particular note, which had been dishonored. In this case the error in stating the time when it became due, could be discovered from the other parts of the description, and was therefore little suited to mislead.

Another point made in defence is, that the indorsement was made without consideration and under such circumstances, that the defendant should not be held accountable upon it. The defendant appears to have been employed by the plaintiff and by other persons to take charge of their logs then floating in the Kennebec river, and to sell them for cash or on credit. This duty he performed. The logs were sold to different purchasers, whose notes he received as payment payable to himself or order. The persons interested in the logs assembled for a

settlement with the defendant, who produced the notes and permitted the owners of the logs to select such, as they preferred. The plaintiff selected this note, and the defendant indorsed it and delivered it to him. There is no testimony in the case to prove, what proportion of the consideration of this note arose out of sales of the plaintiff's logs to the makers. Or even that any part of it did. The defendant would not have been at all events liable to pay the plaintiff the amount, for which his logs had been sold, because he had sold them in connexion with the logs of other persons, and had taken a note to himself for the gross amount of the sales. But to be exempted from making such payment he must prove, that he had sold some of the plaintiff's logs to the makers of the note, and that he had been unable to obtain pay for them. The difficulty attending this point in the defence is, that there is no proof, that this note was received in whole or in part in payment for logs owned by the plaintiff and sold to the makers. It might or it might not have been so. The defendant has left it wholly uncertain; and the burden of proof was upon him. As the case is presented, the defendant appears to have been accountable to the plaintiff for logs, which he had sold to other persons as his agent. And that on a settlement of that claim he indorsed and delivered this note to him. The discharge of that liability was a valuable consideration for such delivery and indorsement. If there had been proof, that this note had been taken in payment for sales of the logs of the plaintiff only, and that the indorsement had been made to transfer to the plaintiff the legal title of that, to which he was before beneficially entitled, it might well have been otherwise.

The defendant exhibited testimony to prove, that he stated to the plaintiff at the time, when the note was indorsed, "that he was not going to make himself personally liable," and that remarks were made by the plaintiff in answer indicating an assent to such a mode of transfer. It has been decided in this State in accordance with the law as administered in most of the other States, that such testimony cannot be received to vary

the legal effect of an indorsement in blank. *Fuller* v. *M'Don-ald*, 8 Greenl. 213.

There is no proof, that the indorser has been discharged by giving time to the makers. The proof of their ability to pay for some time after the note became payable does not have that effect.                    *Judgment on the verdict.*