PALMER *et al. v.* WHITNEY, President, &c.

PROMISSORY NOTES—LIABILITY OF INDORSERS.—Where *A* draws a bill of exchange on *B*, (who accepts it,) payable to the order of *C*, who indorses it to *D*, and *D* indorses it back to *C*, the latter can maintain no action thereon against *D*.

SAME.—But where *A* draws a bill of exchange on *B*, (who accepts it,) payable to the order of *C*, who indorses it to *D*, who indorses it back to *C*, all on the day of its date, and the latter, before its maturity, indorses it, and procures it to be discounted, on his own account, by a bank, such bank may maintain an action upon it against *D*; because. in the latter case, the transaction imports, upon its face, that the subsequent indorsement was made for the accommodation of the prior indorser, *C*.

SAME—NOTICE OF PROTEST.—It is enough to bind the indorser, if the holder of a bill make diligent inquiry for the indorser, and act upon the best information he can procure. There must be ordinary or reasonable diligence, such as men of business usually exercise when their interests depend upon obtaining correct information.

SAME.—Where a bank, discounting a note or bill, inquires of the person presenting it as to the residence of the indorser, and sends notice to the place named by him, this is due diligence, and sufficient to charge the indorser, though he never resided there, or had removed to another place.

NOTARY, NOTICE BY.—A notary, in giving notice of protest, does not act officially, but as the agent of the holder of the bill, and, therefore, his signature to the notice, without attestation by his seal of office, is sufficient.

APPEAL from the *Bartholomew* Circuit Court.

DAVISON, J.—The appellee, who was the plaintiff, sued *Geo. W. Palmer* and *Thos. J. Richards,* alleging in the complaint that the defendant, *Palmer,* on the 10th of *August,* 1857, at *Bartholomew* county, drew a bill of exchange on *Burris Moore,* and thereby required him, three months after the date thereof, to pay to the order of *J. Lakin,* at the Bank

of *Louisville*, in the State of *Kentucky*, 1,000 dollars, value received; that on the day of the date of the bill *Moore*, the drawee, accepted it, and *Lakin*, the payee thereof, indorsed and delivered the same to the defendant, *Richards*, who afterwards, on the same day, indorsed and delivered it to said *Lakin*, and that *Lakin* afterwards, and before the maturity of the bill, for value received, indorsed it to the plaintiff, who, when the bill matured, presented it for payment at the place where payable, and demanded payment, but payment thereof was refused, and the same was protested for non-payment. It is averred that on or about the time of the indorsement to *Richards*, he resided in said county, and his post office address then, or about that time, was at *Columbus*, in said county; that *Lakin*, when he sold and indorsed the bill to the plaintiff, was inquired of, by the plaintiff, where the drawer and indorsers resided, and he, *Lakin*, in answer to that inquiry, then and there stated that *Richards* resided in *Bartholomew* county, and his post office address was *Columbus*, and that plaintiff, upon the presentation and non-payment of the bill, instituted further inquiry as to the residence and post office address of *Richards*, and was told by persons who knew him, and where he resided, shortly before that time, that he resided in said county, and that *Columbus* was his post office address; and further, it is averred that plaintiff, on the 14th of *November*, 1857, the day on which he received notice of said protest, put in the post office at *Madison*, *Indiana*, post paid, notices to *Palmer* and *Richards*, severally, of the presentment, non-payment and protest aforesaid, and that he did not learn that *Richards* had removed from said county until after the commencement of this suit. And the plaintiff, in fact, says that the sum specified in the bill, with interest, &c., is due and unpaid; wherefore, &c. *Richards*, one of the defendants, demurred to the complaint; but his demurrer was overruled, and he excepted. The defendants answered

by a denial. The Court tried the issues and found for the plaintiff. Motion for a new trial denied, and judgment.

As has been seen, *Lakin*, the payee, indorsed the bill to the defendant, *Richards*, who indorsed it back to *Lakin*, and he indorsed it to the plaintiff; hence it is argued that *Lakin*, having become the indorsee of *Richards*, was placed in his original position of payee and first indorser, and could not, therefore, have held *Richards* liable on his indorsement; and, that being the case, *Richards* is not liable to the plaintiff, because the plaintiff, as indorsee of the bill could have no right of action against *Richards*, not held by *Lakin* when he indorsed it. We are referred to Chitty on Bills, p. 442, where it is said that, "unless under circumstances which must be specially stated on the record, no action can be maintained on a bill against a person who became a party subsequently to the holder, or plaintiff, for if it were otherwise the defendant in such action might, as indorser, deriving title from the plaintiff, be entitled to recover back again in another action against the plaintiff, the identical sum which the plaintiff had previously recovered from him, which would introduce a circuity of action; and, therefore, where *A* having brought suit against *B*, on a promissory note made by *C* to *A*, and indorsed by him to *B*, and by *B* again indorsed to *A*, and having obtained a verdict, the judgment was arrested." See, also, *Bishop* v. *Hayward*, 1 T. R. 470, and *Mainwaring* v. *Newman*, 2 Bos. and Pul. 125. These authorities are referred to by Judge *Story* in his treatise on bills, &c., with seeming approval. Story on Bills of Exchange, sec. 218. In this case the bill, with its indorsements, was filed with the pleading; they are in the usual form, and it must be conceded that, in the complaint, there is nothing specifically stated, which, in any degree, tends to show that the indorsements were made, under any circumstances, other than those which ordinarily attend such transactions. If, then, the authorities to which we have

Palmer *v.* Whitney, President, &c.

been referred express the law, and we think they do, it is very clear that *Lakin*, when he indorsed to the plaintiff, could not have maintained an action against *Richards* as his indorser. Can the plaintiff in this action recover against *Richards* as a party to the bill? The appellee contends that, in view of the alleged facts, it must be presumed that the indorsement of *Richards* was made by him to enable *Lakin* to raise the money by the negotiation of the bill, and that he was, therefore, a mere accommodation indorser, and as such, though he was not responsible to *Lakin*, is liable to the plaintiff. There are authorities in support of that position. Thus, in *Mauldin* v. *Branch Bank*, 2 Ala. 502, it was decided that, "if a prior indorser offer a note to a bank to be discounted, on his own account, the transaction imports upon its face that the subsequent indorsement was made for the accommodation of the prior indorser." See, also, *Wallace* v. *Branch*, 1 Ala. 565. These decisions are cited and relied on in *Runyon* v. *Reed*, 6 Am. Law Reg. p. 302, which was an action against *Isaac Reed*, upon a promissory note made by *Osmon Reed* in favor of *James Whetham*, who indorsed it to the defendant, who indorsed to the maker, and he, before the maturity of the note, indorsed it to *Runyon*, the plaintiff. *Held*, that the indorsement of the maker was, when standing unexplained, evidence that the indorsements prior to his name were for his accommodation. The principle involved in the decisions to which we have just referred evidently applies to the case at bar, and we are inclined to follow them. In the absence of contrary proof, it must be presumed that *Richards* indorsed the bill for the mere purpose of enabling *Lakin* to raise the money by its negotiation. This conclusion seems to be consistent with the present mode of making and indorsing a bill of exchange, intended to be discounted at a bank, for the use of one of its parties, and the result is, we must, in view of the case made by the complaint, regard the defendant an indorser

for the accommodation of *Lakin*, and as such liable to the plaintiff.

The next question to settle is, was the the notice of protest sufficient? The record does not, as required by rule 30 of this Court, purport to contain "all the evidence given in the cause." But the evidence before us, so far as it relates to the notice, proves, in effect, the same facts alleged in the complaint. The facts proved are as follows: *Richards* for many years resided in *Bartholomew* county, but some five months prior to the time he indorsed the bill removed from that county to *Tipton* county, became a resident of the last named county, and has continued ever since to reside therein. His post office address, while he resided in *Bartholomew* county, was *Columbus*, where he was well known. Afterwards, and while his residence was in *Tipton* county, his post office address was *Tipton*. The bill was drawn at *Columbus*, and there indorsed by *Richards*, who was then at *Bartholomew* county on a visit. The bank, of which the plaintiff is president, is at *Madison*, about forty-two miles from *Columbus*. Between these places there is a daily communication by railroad, and also a communication by telegraph. The plaintiff had acquaintances and correspondents in *Columbus* when the bill became due, and might, by writing to them, have ascertained the post office address of *Richards* in less than twenty-four hours. When *Lakin* presented the bill for discount he stated, in answer to an inquiry addressed to him by the plaintiff, who was then the president of the bank, that *Richards* was a farmer living in *Bartholomew* county, near *Columbus*. On the evening of the day on which the bank received notice of the protest, the plaintiff, who was still the president, &c., inquired of one *Huffman Barton*, who had formerly resided in said county, as to the post office address of *Richards*, and was informed by him that it was at *Columbus*, that he, *Barton*, knew where *Richards* lived, and had been at his

house. And on the same evening the notice was put into an envelope, addressed to *Thomas J. Richards*, at *Columbus*, and deposited in the post office in *Madison*.

Are these facts sufficient to charge the indorser? The notice of the non-payment of the bill was not directed to him at his nearest post office. But was that essential? It is said to be "enough that the holder of a bill make diligent inquiry for the indorsers, and acts upon the best information he can procure. If, after doing so, the notice fail to reach the indorser, the misfortune falls on him and not on the holder. There must be ordinary or reasonable diligence, such as men of business usually exercise when their interest depends upon obtaining correct information. The holder must, however, act in good faith, and not give credit to doubtful information when better could have been obtained." *Bank, &c.* v. *Bender*, 21 Wend. 642. Thus, "where a bank, on discounting a note or bill, inquires of the person presenting it as to the residence of the indorser, and sends notice to the place named by him, this is due diligence and sufficient to charge the indorser, though he never resided there, or had removed to another place." Edwards on Bills, &c., p. 609, and cases there cited. These authorities, it seems to us, enunciate a correct exposition of the law. Do they apply to the case at bar? The plaintiff, as we have seen, inquired of the person who presented the bill for discount as to the residence of the indorser, and was informed "that he resided near *Columbus*, in *Bartholomew* county." For aught that appears in the evidence, he had no reason to doubt the correctness of this information. And, having made further inquiry of a person who professed to know, was told that the indorser's post office address was *Columbus*. This, we think, was an exercise of ordinary diligence. As holder of the bill the plaintiff was not, in our opinion, required by any rule of law to make further inquiry as to the defendant's residence. And though

in point of fact he did not reside " near *Columbus*, in *Bartholomew* county," the notice, as directed and sent, was sufficient. *Ransom* v. *Mack*, 2 Hill 587; *Bank of Utica* v. *Davidson*, 5 Wend. 587; *Dikens* v. *Beal*, 10 Peters 572.

There is, however, another ground on which the notice of protest is said to be defective. It is in the usual form and signed by the notary who protested the bill, but the alleged defect is that it does not bear his official seal. This objection is not well taken. The statute, it is true, requires "all notarial acts" to be attested by a seal. 1 R. S. p. 377, § 4. But a notary, when he gives notice of protest, does so, not officially, but as agent for the holder of the bill, and thus acting as agent, his mere signature to the notice, without attestation by his seal of office, is sufficient. *Harris* v. *Robinson*, 4 Howard 346; *Warren* v. *Gilman*, 17 Maine 360; *Bank, &c.* v. *Smith*, 18 Johns. 230; *Crawford* v. *Branch Bank*, 7 Ala. 205; *Cowperwait* v. *Shepfield*, 1 Sandf. 416; Edwards on Bills, &c., 628.

Another point is made by the appellant in his brief, but it does not appear to have been presented to the Circuit Court for its consideration, and will not, therefore, be noticed in this Court.

*Per Curiam.*—The judgment is affirmed, with 3 per cent. damages and costs.[1]

*S. Stansifer*, for the appellant.

*F. T. Hord*, for the appellee.

(1) No brief with the record.